## Geyer et al. *v.* Huntingdon County Agricultural Association et al., Appellants.

Argued April 14, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel H. Stewart*, for appellants.

*I. Newton Taylor*, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 23, 1949:

The course of this litigation and the court's decision therein reveal a misconception of the controlling issue.

John K. Geyer and Edwin J. Brooks filed a complaint against Huntingdon County Agricultural Asso-

ciation, a corporation, and J. M. Harper, in which they asserted that on January 25, 1947, J. M. Harper, as President of the Huntingdon County Agricultural Association, entered into a contract with Col. A. L. Gatewood wherein the latter agreed to exhibit a rodeo at a fair to be held by the Association in August of that year, in return for which he was to receive half of the gate receipts with a guaranteed minimum of $3000. A copy of the contract was attached to the complaint as an exhibit; it commences as follows:—"This agreement made and entered into at Huntingdon, Pa. this the twenty-fifth day of January, 1947, by and between Col. A. L. Gatewood of Bethany, W. Virginia, owner and operator of the Flying X Rodeo, hereinafter known as the party of the First Part, and the Huntingdon County Agricultural Association of Huntingdon County, Pa. (hereinafter known as the party of the Second Part) Witnesseth:" etc. The contract was signed:

"Col. A. L. Gatewood,
Owner & Operator of
Rodeo"
"J. M. Harper,
Pres. Huntingdon Co.
Agricultural Assn."

The complaint set forth that on August 2, 1947 Gatewood assigned to Geyer and Brooks all of the money which would become due and owing to him under the contract; the assignment was made as security for the payment by Gatewood of a debt of $3,334 which he then owed them. It was further alleged that on August 19, 1947 this assignment was mailed to Harper, President of the Association, that Gatewood exhibited the rodeo at the fair pursuant to the contract, and that defendants paid him $4,100 for the performances, which payment, however, was made subsequent to the delivery of the assignment to Harper as President of the Association. Plaintiffs claimed as due them the sum of $3,334, being

the amount of the debt for which the assignment had been given to them as security.

In its answer to the complaint the Agricultural Association admitted that Col. Gatewood had exhibited the rodeo at the fair and that Harper had paid him the $4,100, but it was claimed that Harper exceeded his authority as President in making that payment. Harper, in *his* answer to the complaint, admitted that the assignment was delivered to him and that he nevertheless paid the sum of $4,043.19 to Gatewood, but he claimed that he made the payment because he was afraid that otherwise Gatewood would not carry out his agreement to exhibit the rodeo.

Plaintiffs moved for judgment on the pleadings. The court granted the motion and entered judgment in the sum of $3,334, with interest, against both the Association and Harper individually. Thereupon plaintiffs, in consideration of the sum of $1,500, assigned the judgment to the Association. Harper then took the present appeal to this Court.

It should be immediately obvious that all the facts narrated in the pleadings in regard to the assignment by Gatewood to Geyer and Brooks, the payment by Harper to Gatewood, and the question of his authority in so doing, have no bearing whatever upon the real issue in this case. Apparently the theory of the Association is that Harper bungled in making payment to Gatewood instead of to plaintiffs as Gatewood's assignees, and it is now seeking, by virtue of plaintiffs' assignment to it of the judgment, to recover from Harper the $1,500 which it paid to plaintiffs for that assignment. Even if, however, the Association has any such claim against Harper it certainly cannot assert it in the present action. As assignee of Geyer and Brooks it can here obtain judgment against Harper only if Geyer and Brooks, the legal plaintiffs in the suit, could properly obtain such a judgment. The action they brought is on the

contract of January 25, 1947, under which recovery can be had only for the 50% of the gate receipts which was to be paid in consideration of the exhibition of the rodeo.[1] But who is liable for such payment under the contract? The contract is signed by "J. M. Harper, Pres. Huntingdon Co. Agricultural Assn." It would appear that he signed it, therefore, not in his personal capacity, but merely as President of the Association, and that it was not intended either by him or by the other contracting party, Col. Gatewood, that he, Harper, was to be held personally liable for its performance. Indeed, as already pointed out,—and this makes his non-liability conclusive—he was not named as a party to the contract, Col. Gatewood being designated as the party of the first part and the Association as the party of the second part; plaintiffs themselves apparently recognize this fact for in their complaint they allege that "J. M. Harper, *as President of the Huntingdon County Agricultural Association*, entered into a Contract and Agreement with Col. A. L. Gatewood," etc. It is inconceivable, therefore, how there can be any recovery on a contract from one who was not a party thereto and who signed it only on behalf of a disclosed principal. While the Association, in its answer to the complaint, asserted that Harper was without authority in making the payment to Col. Gatewood it did not claim that he was without authority in executing the original contract; only if he had lacked that authority could he have become subject to individual liability thereon. It is hornbook law that "An authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party": 3 C. J. S. 119, §215, and that, "In the absence of manifestations to

---

[1] Plaintiffs in fact limited their claim to $3,334 for the payment of which the assignment of the 50% of the gate receipts had been given to them as security.

the contrary therein, an unsealed written instrument is interpreted as the instrument of the principal and not of the agent if, from a consideration of it as a whole, it appears that the agent is acting as agent for a principal whose name appears therein as such": Rest. Agency, §§155, 327.[2]  This is the law in Pennsylvania, as presumably in all other jurisdictions: *Dodson Coal Co. v. Delano*, 266 Pa. 560, 109 A. 676; *United States National Bank of Portland v. Union National Bank of Philadelphia*, 268 Pa. 147, 155, 110 A. 792, 794; *Yentis v. Mills*, 299 Pa. 25, 30, 31, 148 A. 909, 911; *Levy v. Conly*, 340 Pa. 332, 336, 17 A. 2d 382, 383; *Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee, v. Wallace*, 346 Pa. 532, 541, 31 A. 2d 71, 76, 77; *Marano v. Granata*, 147 Pa. Superior Ct. 558, 561, 24 A. 2d 148, 149, 150.

The judgment in favor of plaintiffs and against defendant J. M. Harper is reversed.

---

[2] The same rule applies even more rigorously in the case of sealed instruments: Rest. Agency, §158.