414 P.2d 763

Sam BEATY and Cular Beaty, Appellants,

v.

Robert T. JENKINS, Georgia May Jenkins, Jim Nagel, George R. Nagel and Mabel J. Nagel, co-partners, dba Nagel Lumber and Timber Co., Appellees.*

No. 1 CA–CIV 286.

Court of Appeals of Arizona.

May 26, 1966.

Rehearing Denied June 23, 1966.

Review Denied Sept. 27, 1966.

Amelia D. Lewis, Sun City, for appellants.

Cox & Hedberg, by John C. Hedberg, Phoenix, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment rendered in favor of the defendant in an action brought to recover damages incurred by a property owner when a shed which had been located upon an adjoining property blew over in a high wind onto a house, shed and fence, located on the plaintiffs' property.

The complaint sounded in negligence and alleged that the defendants had not properly attached the shed in question to the ground. The shed was used for the storage of lumber upon the defendants' property which was located immediately to the east of the plaintiffs' property. The shed was approximately 80 feet long, 20 feet wide, and was open on the east side for the full 80 foot length thereof.

The case was tried to the court without a jury and there was no request for findings of fact and conclusions of law. The court rendered judgment for the defendants without indicating its reason for so doing.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7458. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

At the trial it was established that the shed in question had been moved from another location on the defendants' lumberyard to a location close to the boundary of the plaintiffs' and defendants' adjoining lands, with the west wall of the shed being some 19 feet east of the plaintiffs' house. There was no witness who purported to have observed the damage when it occurred. A tenant in the plaintiffs' house testified that she returned to the house a little after 10 p. m. and found it " * * * covered over with lumber, tin, all kinds of pieces of lumber * * *." On the evening in question there was a storm in the vicinity of the City of Winslow, Arizona, in which city the properties of the parties are located. The highest speed of the wind for any one minute period recorded on the day in question at the Winslow Municipal Airport by the United States Department of Commerce Weather Bureau was 46 miles per hour from an east-southeast direction. This was the second highest wind recorded for the calendar year in which this accident occurred and the only high wind recorded during that year coming from an easterly direction.

The plaintiffs established that the shed in question was moved without securing a building permit from the City of Winslow, as required by the building code of the city. This was the extent of the plaintiffs' opening case. After a motion for judgment in favor of the defendants had been denied at the close of the plaintiffs' case, the plaintiffs further established, in cross-examination of a defendants' witness, that because of the frost line in Winslow, good building practice would have required a footing of 16 inches in depth, while the footing built under the structure in question was only 12 inches in depth. Other than this testimony, there was no evidence that the defendants had violated any standard building practices or any ordinances or statutes in connection with the building in question. There was testimony that the shed was built in the normal manner of similar sheds, in accordance with good building practices,

that it had been installed in its last location for three years without incident, and that it had been used in another location previously with similar installation for three years without accident. The wind on the evening in question had certain "freakish" qualities, in that loosely stacked lumber around the shed was not disturbed, while a heavy roof of a truck shop four hundred yards away, together with the last row of cement blocks to which the roof was attached, were lifted and moved about two inches.

■ Though there are numerous assignments of error, this court believes the only real question presented on appeal is whether there is any credible evidence to support the judgment rendered. This case having been tried to the court without findings of fact having been requested or rendered, this court is constrained to view the evidence most favorably to the position of the defendants and to uphold the judgment of the trial court if it is possible to do so on any theory within the issues framed by the pleadings or pretrial order. Gabitzsch v. Cole, 95 Ariz. 15, 18, 386 P.2d 23, 25 (1963).

■ The plaintiffs rely heavily on appeal upon the proven violation of the building code of the City of Winslow in failing to secure a building permit. Our Supreme Court has held many times that the violation of a safety statute constitutes negligence per se, but negligence per se does not establish liability unless there be a causal relationship between the violation and the claimed injury. This law has been expressed by our Supreme Court as follows:

"The violation of the ordinance might or might not have been the proximate cause of the accident. This also is a question for the jury under proper instruction and it is a separate issue. * * * It is well settled that a violation of a safety statute constitutes negligence per se, Deering v. Carter, supra. But after the jury finds such a violation the question of the proximate cause of the accident remains to be answered, Mercer v. Vinson, 85 Ariz. 280, 336 P.2d 854."

J. H. Welch & Son Contracting Co. v. Gardner, 96 Ariz. 95, 99, 392 P.2d 567, 570 (1964)

Here, we have no showing of any causal relationship between the failure to secure the building permit other than possibly the failure to make the footings as thick as required by the code. In determining whether this was one of the proximate causes of the plaintiffs' injury, the trial court had to weigh the testimony of a building contractor with some twenty-four years of experience who testified that the reason for the carrying away of this building was the high wind, that the principal structural failures occurred at the point where the studs had been properly nailed to the wooden plates bolted to the foundations and that regardless of how thick the foundations might have been,[1] the result would have been the same. There was no direct refutation of this testimony. We believe that under these circumstances it was a question of fact for the trial court to determine whether the failure to provide adequate footings was a cause of plaintiffs' injury.

Considerable space is devoted in the briefs to the discussion of whether the doctrine of res ipsa loquitur applies in this action. We do not believe it to be necessary to decide this question, for, regardless of whether the doctrine applies, the problem presented here remains the same. The following language of our Supreme Court is deemed applicable:

"The doctrine of res ipsa loquitur is simply a rule of circumstantial evidence and gives rise to an inference of responsibility for an injury. Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 68 P.2d 952 (1937); Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934); Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162 (1933). There is no magic attached to the utterance of the phrase. In going forward with his proof plaintiff must still prove proximate cause and show that no injury would have resulted but for some sort of negligence on the part of defendant." McKeever v. Phoenix Jewish Community Center, 92 Ariz. 121, 123, 374 P.2d 875, 877, 1 A.L.R. 3d 957 (1962)

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120E.

---

1. A portion of this witness's testimony is as follows:

"Q John, in answer to the judge's question, you said that even if there had been another four inches, it wouldn't have made any differences in this damage. Will you explain why that is so?

"A Well, the building was open on the one side which tore the studs away from the plates on most of the building and, if it had been four foot thick, it wouldn't have helped hold down the building."