465 P.2d 610

Joseph D. FERRARELL and Daisy Ferrarell, his wife, Appellants,

v.

Donald E. ROBINSON and Jane Doe Robinson, his wife; Leo Kramer; and Universal Surety Company, Appellees.

No. 1 CA–CIV 876.

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 16, 1970.

Rehearing Denied March 13, 1970.

Review Denied April 7, 1970.

**474**

Charles Christakis, Phoenix, for appellants.

Guy V. LoStracco and Ross Anderson, Phoenix, for appellees Donald E. Robinson and Jane Doe Robinson.

Lewis, Roca, Beauchamp & Linton, by John P. Frank and Gerald K. Smith, Phoenix, for appellees Kramer and Universal Surety Co.

HAIRE, Judge.

The plaintiffs, husband and wife, sued the following defendants for breach of contract and fraudulent misrepresentation: Realty Investment Consultants, Inc. (hereinafter R.I.C., Inc.); Leo Kramer, the president and designated broker of R.I.C., Inc.; Donald E. Robinson, a salesman employed by R.I.C., Inc.; and Universal

Surety Co., the surety of Kramer and R.I.C., Inc. The fraudulent misrepresentation claim was dismissed at the conclusion of plaintiffs' case and is not an issue on this appeal. Trial to the court resulted in a judgment for plaintiffs against only R.I.C., Inc. Plaintiffs appealed from the judgment in favor of the remaining defendants.

■ Inasmuch as the trial court did not make findings of fact and conclusions of law, this court must view the evidence in a light most favorable to the position of the appellees and uphold the judgment of the trial court in their favor if there is any reasonable evidence in support thereof. Beaty v. Jenkins, 3 Ariz.App. 375, 414 P.2d 763 (1966).

R.I.C., Inc., was incorporated on February 20, 1963. In early May 1963 plaintiffs entered into agreements authorizing R.I.C., Inc., to act as their agent in acquiring specified land and constructing two fourplex apartment units upon it. At or near the time the agreement was signed, plaintiffs paid $3,000.00 to defendant R.I.C., Inc., leaving a balance of $65,000.00 due on the contract price.

Thereafter R.I.C., Inc., deposited $100.00 in escrow to purchase certain specified land, but for reasons hereinafter set forth that purchase was never consummated. Likewise, though R.I.C., Inc., had construction plans drawn up and approved, no construction work was ever done. The $3,000.00 paid by plaintiffs was placed in the general account of R.I.C., Inc., and that account was depleted by July 1, 1963. Shortly thereafter, because of financial difficulties, R.I.C., Inc., ceased doing business. In September 1963 plaintiffs became concerned because no work had been done, so they called R.I.C., Inc., and were advised by an answering service that R.I.C., Inc., was no longer in business. Plaintiffs then instituted this action to recover the $3,000.00 they had paid R.I.C., Inc.

In the trial court plaintiffs recovered judgment against R.I.C., Inc., and it is not disputed on this appeal that R.I.C., Inc.,

breached its contract with plaintiffs. The questions to be determined herein relate to the other defendants' liability, if any, for that breach.

## LIABILITY OF ROBINSON

Defendant Robinson, a salesman employed by R.I.C., Inc., was first contacted by plaintiffs in response to a newspaper advertisement relating to income property. It is not disputed that he was the employee of R.I.C., Inc., who negotiated with plaintiffs, nor that on behalf of R.I.C., Inc., he signed the agreements with plaintiffs. Both of those agreements, that is, the "Contract" (Exhibit 6) and "Agent's Authorization" (Exhibit 4), were expressly made in the name of R.I.C., Inc., and defendant Robinson's signature indicated that he signed on behalf of R.I.C., Inc. Further, the acknowledgments on both indicated that defendant Robinson signed as an "Authorized Consultant" of R.I.C., Inc. Such signatures raise at least an inference that the principal only, and not the agent, is a party to the contract. Restatement (Second) of Agency Sec. 156, Comment *a* (1958).

One who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement. Geyer v. Huntingdon County Agricultural Association, 362 Pa. 74, 66 A.2d 249 (1949); Restatement (Second) of Agency Sec. 320 (1958); 3 C.J.S. Agency § 215 (1936); 3 Fletcher, Cyclopedia of the Law of Private Corporations Sections 1117–1118 (Perm. ed. 1965). Plaintiffs have not brought to our attention, nor are we aware of, facts in the instant case which would remove defendant Robinson from the shelter afforded by the foregoing general rule. Further, we have not found any evidence whatever of any wrongful acts on the part of defendant Robinson. We are therefore of the opinion that the trial court acted properly in entering a judgment in favor of defendant Robinson.

## LIABILITY OF KRAMER

Plaintiffs, in attempting to hold defendant Kramer personally liable, again seek to impose responsibility upon an individual for an alleged corporate wrong. It is clear, however, that defendant Kramer, either as an officer or director cannot be held liable on the contracts of R.I.C., Inc., where, as here, there is no evidence that he undertook to bind himself individually on those contracts. Watkins v. Cotton, 180 Okl. 73, 67 P.2d 957 (1937); S & H Concrete Construction Co. v. Genova, 384 S.W. 2d 816 (Mo.App.1964); *Cf.* Jolles v. Holiday Builders, Inc., 222 Ga. 358, 149 S.E.2d 814 (1966).

It is also clear that private property of a corporate shareholder (here defendant Kramer cannot usually be reached to satisfy corporate debts. Art. IV of the R.I.C. Articles of Incorporation contain the statutorily required (A.R.S. Sec. 10–122, subsec. 9) statement exempting its shareholders' private property from liability for corporate debts. A corporation is a legal entity doing business in its own right and on its own credit as distinct from the credit of its shareholders. Employer's Liability Assurance Corp. v. Lunt, 82 Ariz. 320, 313 P. 2d 393 (1957). Plaintiffs contend however, that this is an instance in which the corporate entity should be disregarded and liability imposed upon the shareholder.

The pertinent facts on this issue are as follows: Defendant Kramer with one Arthen incorporated R.I.C., Inc., on February 20, 1963. Each became a director and each at the outset held two offices. Kramer was elected president and treasurer; Arthen was elected vice-president and secretary. Kramer purchased 50,000 shares of stock in R.I.C., Inc., in exchange for accounts receivable, furniture and equipment, personal services to the corporation and some cash. No contention is made that these assets constituted inadequate consideration for the issuance of the stock to Kramer. It is not apparent from the corporate records that anyone but Kramer ever owned shares

in R.I.C., Inc. Although it appears from the evidence that the business of the corporation was a continuation of a previously existing business conducted through a partnership, there is no showing that plaintiffs were in any way misled because of this. The plaintiffs had not previously dealt with the partnership, and in fact this partnership was no longer in existence when plaintiffs came to Arizona. All of plaintiffs' agreements and contacts were with the corporation.

As previously stated, the mere fact that Kramer was an officer and the sole shareholder in R.I.C., Inc., does not in and of itself make this situation one in which the corporate form should be disregarded. Cooper v. Industrial Commission, 74 Ariz. 351, 249 P.2d 142 (1952). The evidence would have to show that the corporation was not only influenced and governed by defendant Kramer, but that there was also such a unity of interest and ownership that the individuality or separateness of defendant Kramer and the corporation had ceased to exist. Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876 (1942); Home Builders & Suppliers v. Timberman, 75 Ariz. 337, 256 P.2d 716 (1953). A review of the record in this action has failed to disclose any basis for such a finding herein. There was no substantial evidence of intermingling of corporate and personal assets, affairs or funds, or that the corporate structure was in any way used for other than legitimate corporate purposes. Further, there would have to be a showing that observance of the corporate form would sanction a fraud. See Home Builders & Suppliers v. Timberman, *supra;* Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958 (1925). While it is clear that plaintiffs did not receive the benefit of their bargain, that alone does not constitute any evidence of fraudulent conduct and it is not sufficient to justify the disregarding of the corporate entity.

The $3,000.00 paid by plaintiff was placed in the general checking account used by R.I.C., Inc. If it were clear from the evidence that when those funds were accepted by R.I.C., Inc., that its officers had no intention of acquiring the land, and building the fourplexes, then such might have constituted a use of the corporate form to perpetrate fraud. See Employer's Liability Assurance Corp. v. Lunt, *supra.* The evidence in this case discloses no such intent, however, and in fact, to the contrary, manifests a good faith intention to earnestly undertake performance of the agreements with plaintiffs.

On the day after the agreements were signed, defendant Kramer drew up a purchase contract and receipt so that R.I.C., Inc., might purchase the land upon which the fourplexes were to be built. On the following day he opened an escrow account with a local title company and deposited funds therein for the transaction. Within three weeks a set of blueprints had been drawn and were submitted, as had been agreed, to a relative of plaintiffs who lived in Phoenix. He approved all the plans. R.I.C., Inc., drew up a "presentation" of the property, apparently for use in obtaining financing.

We believe that the foregoing adequately demonstrates that when the defendant corporation entered into the contract with plaintiffs, all of the defendants had every intention of seeing the project through to completion. There is no evidence that these preparatory activities were a mere sham or that they were engaged in to disguise a contrary intent. Since there are no facts which would justify disregarding the corporate entity, defendant Kramer cannot be held personally liable merely because of his position as an officer or stockholder of the defendant corporation. Nor can Kramer individually be held liable as a broker. From the foregoing recitation of the evidence it is clear that there was no evidence whatever of any wrongful act by either Kramer individually or by any salesman who might have been working under his license.

## LIABILITY OF UNIVERSAL SURETY CO.

■ While plaintiffs in their brief mentioned several different brokers' licenses held by Kramer, it is clear from plaintiffs' complaint, and from the evidence, that the wrongful act relied upon by plaintiffs was the default of the corporate defendant, R.I.C., Inc., in allegedly misappropriating the $3,000.00 paid by plaintiffs and not returning these monies when the defendant corporation was unable to perform its contract by the construction of the fourplexes. Therefore, the surety's liability, if any, must result from its capacity as a surety on the broker's license issued to the defendant corporation, R.I.C., Inc., on July 2, 1963. In determining this matter, it should be noted that the surety is not liable under the bond for any and all acts of the bonded broker. Rather, by the language of the statute, the surety's liability is limited to certain acts committed by the broker "in his capacity as such." *A fortiori,* the surety would not be liable under the broker's bond for any and all wrongful acts of the licensed corporation, R.I.C., Inc., but rather, only for such wrongful acts committed by the designated broker (or by a salesman licensed under the broker's license) "in his capacity as such" while acting for and on behalf of the corporation. We have previously indicated in this opinion that there was no evidence of wrongful acts of any kind by either the broker, Kramer, or by the salesman, Robinson. Therefore, we find no basis for finding the defendant surety liable. Even if it could be argued that the funds of plaintiffs were converted by Kramer as an employee of R.I.C., Inc., these funds were used prior to the effective date of the bond issued by the surety in connection with R.I.C., Inc.'s broker's license, and therefore even under this theory the surety could not be held liable. Palmer v. Continental Casualty Co., 205 Cal. 34, 269 P. 638 (1928).

■ Plaintiffs urge that there was another default in addition to the alleged conversion of plaintiffs' funds and that is, the inability of R.I.C., Inc., to complete performance of the contract by construction of the fourplex apartments, and that this breach of contract occurred after the effective date of the bond. Even if we assume that this breach of contract did occur after the effective date of the bond, the result urged by plaintiffs does not necessarily follow. While this breach of contract might constitute a "default" as that term is normally used in contract law, such a breach by the defendant corporation can hardly be considered a " * * * wrongful act, default, fraud or misrepresentation of the broker *in his capacity as such* * *"[1] and only such acts are covered by the bond here involved. We do not feel that the breach committed by the defendant corporation in being unable to perform its contract by the construction of the fourplexes constitutes any kind of a breach by the broker "in his capacity as such".

The evidence does not disclose any basis for imposing liability on the appellees. Therefore the judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.

---

1. A.R.S. Sec. 32–2124, subsec. G (Supplement 1969–70) (formerly A.R.S. Sec. 32–2124, subsec. C). (Emphasis supplied.)