TRI-STATE TRUCK AND EQUIPMENT COMPANY,
INC. *v.* FRANKLIN E. STAUFFER
ET AL.

[No. 108, September Term, 1974.]

*Decided January 13, 1975.*

222

The cause was argued before ORTH, C. J. and THOMPSON and MENCHINE, JJ.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellant.

*Leonard L. Lipshultz,* with whom were *Ronald G. DeWald* and *Lipshultz & Hone* on the brief, for appellee Stauffer. *Carmyn J. Lombardo,* with whom was *Edward C. Bell* on the brief, for other appellees.

MENCHINE, J., delivered the opinion of the Court.

On November 29, 1973 a jury in the Circuit Court for Prince George's County rendered a verdict in favor of the plaintiff, Franklin E. Stauffer, against Tri-State Truck and Equipment Co., Inc. [Tri-State], Johnnie Whichard, and Sam Parker, a/k/a Harrison Charles Parker, individually, and t/a Market Transport Company,[1] in the sum of $48,500.00. Final judgment against Johnnie Whichard and Sam Parker, a/k/a Harrison Parker, individually and t/a Market Transport Company, was extended on December 5, 1973. No appeal from that judgment was taken. Final judgment against Tri-State was extended on January 9, 1974. It is solely with the latter judgment that the subject appeal is concerned.

---

* Note: *Certiorari* denied. Court of Appeals of Maryland, May 23, 1975.

1. The Unsatisfied Claim and Judgment Fund Board, (predecessor to the Maryland Automobile Insurance Fund) had entered its appearance for Whichard and Parker.

On the 5th of June, 1969 Franklin E. Stauffer, [Stauffer] while operating a motor vehicle, had stopped it at the intersection of U.S. 1 and Cherry Lane, in Laurel, Maryland, preliminary to making a left turn. His left turn signal was flashing. A truck operated by Johnnie Whichard, and owned by Tri-State, struck the Stauffer vehicle in the rear, causing personal injury and property damage. The negligence of Whichard and the contributory negligence of Stauffer are not in issue.

Stauffer had claimed damages from Tri-State upon alternate bases: (a) asserting it was liable under the principle of *respondeat superior*, and (b) asserting it was liable under the theory of negligent entrustment. The trial court granted Tri-State's motion for directed verdict as to the claim asserted under the principle of *respondeat superior*, but rejected its motion for directed verdict on the theory of negligent entrustment.

Appellant makes three contentions on appeal:

1. That its motion for directed verdict should have been granted because of the absence of any showing that its negligence was a proximate cause of harm to the appellee.
2. That reversible error was committed in the charge to the jury.
3. That reversible error was committed in the admission of evidence.

### The Motion for Directed Verdict

The evidence established that Tri-State was engaged in a large scale [2] car and truck rental business in Baltimore City. Previous truck rentals had been made by Tri-State to "Market Transportation," 1399 5th Street, N. W., Washington, D. C. There was evidence that "Market Transportation" was the firm name of Harrison Charles (alias Sammy) Parker, who resided at 941 R Street, N. W., in the District of Columbia.

---

2. Tri-State leased about 200 cars and about 400 trucks.

The evidence bearing upon the rental of the truck involved in the subject collision was conflicting. Robert W. Wentz, the Vice President of Tri-State, called as a witness by Stauffer, testified that he had handled the subject truck rental transaction on June 3, 1969 for the account of Market Transport, having dealt with Charles Parker personally. He said that leasing document Exhibit 14 reflected the transaction accurately; that Parker had presented a driver's license bearing a sixteen digit number; that the physical description appearing on that license was compared with that of the renter; that he also had compared the signature on the license with that of "C. Parker" on the document. He acknowledged that a second leasing document for the account of Market Transport bearing an identical license number contained the signature "Harrison Parker." Examination of the two documents demonstrates a marked difference in the two signatures. Wentz acknowledged that he did not record the date and place of issue of the license. The leasing document that Wentz claimed reflected the transaction in question was on a different form than other documents showing rentals for the account of Market Transport. Wentz's explanation was that it was a "new form." Other leasing documents offered in evidence, however, dated both before and after the subject transaction, used the "old form." There was evidence that Charles Harrison (Sammy) Parker was licensed to drive in Virginia but not in Maryland or the District of Columbia.

The testimony of the defendant Parker told a different story. He said that he never had loaned that license to another; that the Virginia license had his photograph upon it and that Whichard did not in any way resemble him. He said that one Hicks [3] and Whichard had gone to Baltimore to get a truck from Tri-State and that "I got a call from Tri-State. The man said it was a man there to pick the truck up, and he didn't have any license. And he said, 'I'm going to let this dude use one of these old papers. I want to get the hell out of

3. An earlier leasing document (Exhibit 13) bore Hicks' signature. He was described as a licensed driver. There is no evidence that the truck in question here was delivered to him.

here, and I'm going to send him back.' " The witness also said: " * * * the mechanic issued this truck. They have a big heavyset colored fellow that they leave there on duty to take care of these kinds of things." When shown Exhibit 14, that Tri-State contended reflected the rental transaction in question, Parker said, "This is not my signature. And there is still no time on this thing. This is something someone just wrote up. This has no time on it.[4] Because it's not a rental company in the world that will rent you a truck and let you take a truck out at 8:00 o'clock in the morning and bring it back at 2:00 o'clock the following day. This don't happen." Commenting on other leasing documents representing rentals for the account of Market Transport bearing both prior and subsequent dates, Parker said, " * * * I'm saying from looking at the rest of them, where somebody signed for the truck each time, each one of them here has got somebody's signature on it that I do know and can bring them here, except this here one, right here (Exhibit 14) I don't know who this is." Parker testified, "I understood that, you know, that he [Whichard] was not too good with a truck." He said that Whichard was driving the truck when it arrived at the market in Washington, D. C. on the date of the rental. A State Trooper who investigated the collision at the scene, testified that Johnnie Whichard was not licensed either in the District of Columbia or in Maryland, and that he charged him with operation of the vehicle without a license. Whichard, who resided at 124 Kentucky Avenue, S. E., Washington, D. C., did not appear at the trial. Tri-State offered no evidence at the close of the plaintiff's case.

The question whether there was a negligent entrustment by Tri-State to Whichard such as would give rise to a cause of action by Stauffer against Tri-State depends upon the facts and circumstances surrounding the truck rental and its subsequent use as influenced or affected, if at all, by the

---

4. We note that four other leasing documents reflecting Tri-State rental transactions for the account of Market Transportation all were mechanically stamped with hour, minute and date *in* and hour, minute and date *out*. Exhibit 14 bore no such stamp.

provisions of Article 66½, § 8-103 (formerly § 114) of the Annotated Code of Maryland.

Section 8-103 (114) reads as follows:

"Renting motor vehicles to another.

(a) *To be rented to licensed person only.* — No person shall rent a motor vehicle or trailer to any person for operation unless the person who will operate the rented motor vehicle or trailer is duly licensed hereunder or, in the case of a nonresident, duly licensed under the laws of the state of his residence; provided that state requires an examination for qualification to operate a motor vehicle and in which state residents of Maryland are given the same privilege.

(b) *Inspection of driver's license.* — No person shall rent a motor vehicle or trailer to any other person for operation until the person in possession of the motor vehicle or trailer to be rented has inspected the driver's license of the person by whom the motor vehicle or trailer is to be operated and compared and verified the signature thereon with the signature of the person written in his presence and compared and verified the physical description thereon with the physical description of the person.

(c) *Record.* — Every person renting a motor vehicle or trailer to another shall keep a record of the registration number of the motor vehicle or trailer rented or, if only a trailer is rented, the registration number of the trailer and the motor vehicle used to haul the trailer, the name and address of the person to whom the motor vehicle or trailer is rented, the number of the driver's license of the person who is to operate the motor vehicle or haul the trailer and the date and place of issuance of the driver's license. The record shall be open to inspection by any peace officer or employee of the Department."

In almost classic understatement the brief of appellant

declares: "Appellant admits that this evidence was sufficient, if believed, to allow the jury to conclude that appellant did not fulfill the requirements of Article 66½, § 114 (now § 8-103), which required that vehicles be rented to drivers who present proof of a valid driver's license."

In this appeal we are required to view the evidence in the light most favorable to the plaintiff-appellee. *Buchanan v. Galliher and Harless*, 11 Md. App. 83, 87, 272 A. 2d 814, 816-817. This rule applies as well to the issue of causation. In *Ness v. Males*, 201 Md. 235, 93 A. 2d 541, it was said at 241 [544]: "Causation, like negligence, is a jury question where the material facts are controverted." See also: *Schweitzer v. Showell*, 19 Md. App. 537, 539, 313 A. 2d 97, 98-99. So viewed, the evidence would permit the jury to find that appellant willfully and purposefully violated § 8-103 (114) and having done so, thereafter fabricated a leasing agreement in efforts to cover up that violation. If the testimony of Parker was believed by the jury, the inference is inescapable that Tri-State was totally unconcerned whether Whichard was a dangerously incompetent driver or not. The jury could find that the telephone call made by the Tri-State employee afforded a clear opportunity for inquiry as to Whichard's skill but that none was made. Tri-State contends that its violation of § 8-103 (114) was not a proximate cause of the harm sustained by Stauffer. The question whether a particular negligent act constitutes a proximate cause of harm is an issue that has long perplexed the Courts.

In Prosser, Law of Torts, Ch. 7, § 41 (4th Ed. HB, 1971) it is said at 236:

> "An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause,' or 'legal cause.' There is perhaps nothing in the entire field of law which has called forth more

disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement as to the proper approach. Much of this confusion is due to the fact that no one problem is involved, but a number of different problems, which are not distinguished clearly, and that language appropriate to a discussion of one is carried over to cast a shadow upon the others.

" 'Proximate cause' — in itself an unfortunate term — is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct.

\* \* \*

P. 241  "On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

\* \* \*

P. 242  "The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of

causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists."

It is, of course, well settled in Maryland that the violation of a statute regulating the use and operation of motor vehicles is evidence of negligence and if such violation causes or contributes to the injuries complained of, it constitutes actionable negligence. *Ford v. Bradford,* 213 Md. 534, 541, 132 A. 2d 488, 491-92.

In *Volkswagen of America v. Young,* 272 Md. 201, 218, 321 A. 2d 737, 746, it was said:

"Legislative or administrative requirements that persons or businesses conduct their operations in a particular manner, and adhere to specified standards, have never been viewed as supplanting tort liability. On the contrary, such statutory or regulatory requirements are deemed to furnish standards by which courts or juries determine, along with other circumstances, whether or not conduct is negligent. Failure to adhere to those standards is evidence of negligence for the court or jury to consider."

It is widely held that the mere violation of a licensing statute will not be regarded as the proximate cause of a collision. Maryland subscribes to that view. *Davis v. Gordon,*

183 Md. 129, 36 A. 2d 699. There is no such general agreement, however, respecting statutes expressly forbidding owners to allow unlicensed persons to operate their vehicles. This distinction is noted in 6 Blashfield, Automobile Law and Practice, 2d Ed. 1966, § 254.26, at 383, *et seq.*:

> "The fact that an owner permits an unlicensed person to drive his automobile ordinarily will not of itself subject the owner to liability on the theory that he has permitted the use of the car by an unskillful operator. However, under a statute requiring licenses for the protection of the public by confining the right to drive to qualified persons and forbidding owners to allow unlicensed persons to operate their automobiles, a violation is evidence bearing on the owner's negligence, or is negligence per se.

> "So, where an examination is required to test the competency of the applicant before the issuance of a license and it is provided by statute that no person shall knowingly permit his automobile to be driven by an unlicensed person, a violation of the statute makes a prima facie case against the owner in favor of one injured through the negligence of the unlicensed driver. Moreover, it has been held that one who intrusts his automobile to a person under the statutory age required for a license is liable for injury resulting from the latter's negligence without proof of the driver's actual incompetence.

> \* \* \*

> "Under a statute making it unlawful to rent a motor vehicle without first ascertaining that the driver had an operator's license, an owner renting an automobile to a person who had no license, without making inquiry as to the ability or competence of such person, may be held liable to a person injured by the driver."

Harper & James, The Law of Torts, Vol. 2, subscribes to the same view with respect to the effect of statutes similar to § 8-103 (114), saying at 1120-21:

"Where the car is entrusted to an unlicensed driver, or where defendant himself drives it without a license, a similar question is presented (if the licensing statute is thought to have safety in mind and not exclusively revenue, or some other unrelated purpose), namely, did the harm result from the want of a license, or (more accurately) because of the risk of unskilled driving which the licensing statute sought to prevent? If the car was driven with all the skill and care the law requires, then the harm did not proceed from such a risk; if the car was negligently driven, then it did. * * * *The legislature has decided that the general safety requires the activity in question to be limited to those who can demonstrate at least a minimum of special skill. It is fair to assume that the unlicensed as a class are far less likely than those licensed to have the skill for which a license is required.* And it is certainly true that when the unskilled attempt what it takes skill to do, some of the intangible factors that go to make up lack of skill are far more likely than not to have contributed to any mishap that occurs. Frequently they do this in ways that are hard to prove; moreover, what evidence there is in the matter is likely to be in the defendant's hands. Both probability and policy, therefore, call for the rule that breach of a licensing statute, if it is negligence to the plaintiff at all, should be *prima facie* evidence that it is the 'proximate cause' of any injury that ensues." (Italics supplied.)

The question whether the violation of a statute prohibiting knowing permission to an unlicensed driver to use a motor vehicle will support an action for damages against the owner of such vehicle has been presented in two Maryland cases. The question was left unanswered in both.

In *State use of Weaver v. O'Brien*, 140 F. Supp. 306, (U.S. D.C., D. Md., 1956) Chief Judge Rozel C. Thomsen referred to Article 66¹/₂, § 111, providing that, "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway of this State by any person who is not authorized to operate such motor vehicle under this Article." and stated at 309-10:

> "Under Maryland law the mere violation of a statute does not support an action for damages, but it is evidence of negligence, and where such violation is the proximate cause of an injury, a right of action accrues to the party injured. Hopper, McGaw & Co. v. Kelly, 145 Md. 161, 169, 125 A. 779; Kelly v. Huber Baking Co., 145 Md. 321, 334, 125 A. 782; Cumberland & Westernport Transit Co. v. Metz, 158 Md. 424, 438, 149 A. 4, 149 A. 565; Brown v. Bendix Radio Division, 187 Md. 613, 51 A.2d 292; Gosnell v. Baltimore & Ohio R. Co., 189 Md. 677, 687, 57 A.2d 322; State, for Use of Parr v. Board of County Commissioners, 207 Md. 91, 113 A.2d 397, 402. See also Gordon v. Bedard, 1929, 265 Mass. 408, 164 N.E. 374 and Kenyon v. Hathaway, 1931, 274 Mass. 47, 174 N.E. 463, 73 A.L.R. 156.

> "It is not necessary in this case to determine whether the mere fact that Chaney permitted O'Brien to drive without a chauffeur's license is sufficient to take the case to the jury against Chaney on the issue, since that fact must be considered in connection with the evidence of O'Brien's drinking." [5]

---

5. The case of *Gordon v. Bedard*, 1929, 265 Mass. 408, 164 N. E. 374 cited by Judge Thomsen, was an early decision sustaining liability in a case of negligent entrustment grounded upon violation of such a statute, wherein the Supreme Judicial Court of Massachusetts had said at 376 of 164 N. E.:

> "The statute was passed to make the roads more safe and convenient for travelers by preventing unlicensed persons from operating motor vehicles thereon. The purpose of licensing operators of automobiles is to make it reasonably certain that the licensee is qualified for the task and a proper person to be licensed. G. L. c. 90, §§ 8, 10. Negligent operation of an automobile

In *U-Haul Co. v. Rutherford*, 10 Md. App. 373, 270 A. 2d 490, the violation of this very statute — § 8-103 (114) itself was urged as the basis for recovery. In *U-Haul*, however, we said at 381 [494]:

> "We have no need to decide whether an entruster would know or have cause to know that the entrustee would be likely to use a motor vehicle in a manner involving an unreasonable risk of physical harm merely because the rental of it was in violation of § 114 as we find here that the evidence was insufficient in law to prove that the statute was violated."

We added at 385 [496-97]:

> " * * * it was not established that U-Haul violated § 114 as declared and it was error requiring reversal to deny the motion for a directed verdict made on the ground that the evidence was insufficient to show the violation."

In the subject case we must decide the issue.

Although the comments in Blashfield and Harper & James, *supra*, would seem to make the issue quite simple, there are decisional differences upon the question of the proximate cause of such a prohibitory rental statute. We shall cite but two cases representative of the respective rationale.

The case of *Christy v. Baker*, 439 P. 2d 517 (Ct. of Appeals of Ariz. 1968) adopts the view that violation of such a statute is not the proximate cause of harm. In Arizona the statute provided:

---

endangering the safety of other travelers is likely to follow if an unlicensed person is given complete control of its operation. The defendant knew that his son had lost his license because he had violated the conditions under which it was granted. Upon all the evidence it was for the jury to say whether the father should have anticipated or foreseen that if his son operated the truck it was reasonably probable that he would so negligently operate it that other travellers would be endangered. Dalton v. Great Atlantic & Pacific Tea Co., 241 Mass. 400, 403, 135 N. E. 318."

"No person shall rent a motor vehicle to another until he has inspected the operator's or chauffeur's license of the person to whom the vehicle is to be rented and compared and verified the signature thereon with the signature of the person written in his presence." (A.R.S. § 28-477)

Violation of the statute by the entrustor was conceded, as was the negligence of the entrustee. The Court in *Christy* said at 518-19:

"Our Supreme Court has held that in order to recover, the plaintiff must show that violation of a statute or ordinance was the proximate cause of his injury. In Pratt v. Daly, 55 Ariz. 535, 104 P.2d 147, 130 A.L.R. 341 (1940), the court said:

' * * * Whenever a valid statute or regulation provides that a certain thing must or must not be done, *if a failure to comply with such regulation is a proximate cause of injury to another, such failure is actionable negligence per se. * * ** ' (Additional emphasis ours) 55 Ariz. at 537, 104 P.2d at 148.

This rule is still the law and has been adhered to recently by both the Court of Appeals and the Supreme Court. (Beaty v. Jenkins, 3 Ariz. App. 375, 414 P.2d 763 (1966) and Brand v. J. H. Rose Trucking Company, supra). The rule has recently been summarized by the United States Court of Appeals, Ninth Circuit, as follows:

'It is true, as plaintiffs contend, that violation of a valid statute enacted for the public safety, or a governmental regulation made in pursuance thereof, is negligence per se; but the violation must also be a proximate cause of the injury to constitute actionable negligence. See Salt River Valley Water Users' Ass'n v. Compton, 1932, 39 Ariz. 491, 8 P.2d

249, 251; Donaldson v. Tucson Gas, Electric Light & Power Co., D.Ariz. 1935, 14 F. Supp. 246; Sisk v. Ball, 1962, 91 Ariz. 239, 371 P.2d 594.

'Even if we assume that section 40-423 was enacted for the public safety, which is questionable, the plaintiffs may not recover unless the jury might properly find from all the evidence that the violation of the statute was the proximate cause of the injuries. In Alires v. Southern Pacific Company (1963) 93 Ariz. 97, 378 P.2d 913, 918, the Arizona Supreme Court held that the trial court properly instructed the jury that: "The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the injury and without which the result would not have occurred." ' Shafer v. Mountain States Tel. & Teleg. Co., 335 F.2d 932 (1964) at 935.

"The Supreme Court has often defined proximate cause as was quoted in Shafer v. Mountain States, supra, and most recently in Brand v. J. H. Rose Trucking Company, supra. In the instant case it was uncontested that the accident was caused by the negligence of Mr. Walk in driving the rented vehicle. Plaintiff contends that sufficient proximate cause linking defendant to plaintiff's injuries is shown where the car was rented in violation of the statute, to a person whose negligence later causes injury. We do not agree. This would be in effect placing strict liability on car rentals for the torts of persons to whom they have rented cars in violation of the statute. If this was the intent of the Legislature in passing § 28-477, the statute would have been so worded rather than attaching a criminal misdemeanor penalty to it. Other Arizona

statutes, such as A.R.S. § 28-417, subsec. B and § 28-420 do provide for joint and several civil liability for those either signing the license application for a person under 18 years of age or allowing such a person to drive without a license. The Legislature made no provision for civil liability for violation of the statute involved in this case. We are not prepared to legislate strict tort liability by judicial decision for the violation of this statute. If liability is to attach it must be proven under the traditional tort law that the negligence in violating the statute proximately caused the injury complained of."

The case of *Mundy v. Pirie-Slaughter Motor Co.*, 206 S.W.2d 587, (Supreme Ct. of Tex. 1947) espouses the rule that violation of such a statute by the entrustor when coupled with proof of the negligence of the entrustee, gives rise to a jury question upon the issue of probable cause. The Texas statute provided, *inter alia,* that it was "unlawful for any person knowingly to permit a motor vehicle owned by him or under his control to be driven by any person not licensed or otherwise authorized under the statute to operate a motor vehicle." The statute did not in terms provide for civil liability. The Court declared at 590-91:

"Under this statute it is plain that defendant's agents were guilty of a violation of the law if they permitted Dickson to operate a motor vehicle belonging to defendant knowing that Dickson did not have an operator's license. While conceding this to be true, defendant urges that the criminal penalty is the only legal consequence of a violation of the law, that the alleged facts that Dickson did not have a license and that respondent's agents knew this are not evidence of negligence, and that in any event the absence of a driver's license could not be the proximate cause of the injury.

"Whether the violation of a criminal statute may be also the basis of civil liability in a given case, in the absence of an express statutory provision

therefor, depends upon whether a purpose of the statute is to set up a standard of conduct in order to give protection to the interests of the class of persons to which the injured party belongs. * * * In the present case we think that it is apparent that the statute is designed to secure a minimum of competence and skill for drivers of automobiles and to fix a standard of conduct for persons lending their automobiles to others to drive, and that its principal aim is to afford some protection to the interests of other persons on or near the public highways. We therefore are of the opinion that the petitioner was entitled to plead and to offer evidence to show that Dickson did not have a driver's license and that defendant's agents knew that he did not have a license, and that the finding of such facts by the jury would be a finding of negligence per se.

* * *

"Mere proof that the defendant's agents were guilty of negligence per se or that they were guilty of negligence in fact, does not, of course, establish liability on the defendant's part. Plaintiff must go further and prove that such negligence was the proximate cause of the collision in which he was injured. Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363. In order to establish proximate causation, plaintiff must show that Dickson operated the automobile negligently (that is, in a manner that was negligent regardless of the lack of a driver's license) and that such negligence was a proximate cause of the collision. The purpose of the statute which defendant is alleged to have violated is to prevent the lending of automobiles to persons not shown by examination and license to be competent to drive, and the danger anticipated and intended to be prevented by the statute is that such persons, if given the opportunity to drive, will do so

negligently and will cause damage to other persons. If, after the automobile is entrusted to such driver, he operates it negligently, and thereby causes damages to a third person, the causal connection is shown between the negligence of the owner in lending him the automobile and the damage to the third person."

For a general discussion of the question and cases in other jurisdictions see the extensive note in 69 A.L.R.2d 978-1001.

The subject case is readily distinguishable from cases such as *Maggitti v. Cloverland Farms Dairy*, 201 Md. 528, 95 A. 2d 81, and *Liberto v. Holfeldt*, 221 Md. 62, 155 A. 2d 698, where the violation of statute was the mere passive act of parking and was held not to be the proximate cause of injury. No connection had been shown between the violator of those statutes and either the injured victim or the operator of the vehicle actually causing harm in either case. Moreover, in a discussion of the question of duty owed in *Maggitti*, the Court of Appeals commented at 532 [82]:

" * * * it may be questioned whether the prohibition was designed to protect other users of the highway or affect their relative rights in any way."

Similarly, in *Liberto* where the defendant had left the ignition key in the lock when he parked his vehicle, the Court in comments upon the duty owed, said at 66 [701]:

" * * * The duty to the public created by the statute was primarily to protect against a theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail. Such duty, in all reasonableness, cannot be said to extend to all the world, but must be a foreseeable duty to a class of which the plaintiff was a member."

On the issue of proximate cause, the Court in *Liberto* pointed out, "[where negligence of one person is merely passive and potential and negligence of another is the

moving and effective cause of the injury, the latter is the proximate cause and fixes the liability.] " at 67 [701]. Thus *Maggitti* and *Liberto* involved statutes not intended to protect other users of the public highways against the negligent operation of motor vehicles and involved circumstances absent any volitional connecting link between the statute violator and the operator of the vehicle causing harm. The violators of the statute in those cases would not reasonably have foreseen that the ultimate result would have occurred as a natural consequence of their violations.

In the subject case, however, a far different picture emerges. We have no doubt that § 8-103 (114) was intended to provide statutory standards for those engaged in the automobile and truck rental business. Nor do we doubt that such standards were imposed for the protection of the public from the negligent operation of motor vehicles. There was an abundance of evidence that Tri-State violated the statute as the following chart, showing duty and breach of § 8-103 (114) by subsection will establish:

Subsection (a)

### The Duty

To assure that the person to whom the vehicle is rented is licensed in Maryland or in the State of his residence.

### The Breach

| Wentz Testimony | Parker Testimony |
| --- | --- |
| Alleged examination of Parker license (shown by other evidence to have been issued by the State of Virginia and not by the place of Parker's residence). | Willful failure by Tri-State to comply. |

Subsection (b)

*The Duty*

To inspect the driver's license, compare and verify the signature thereon with the signature of the person written in his presence and compare and verify the physical description thereon with the physical description of the person.

*The Breach*

| Wentz Testimony | Parker Testimony |
|---|---|
| Duty performed. | Willful failure by Tri-State to comply, supplemented by testimony that his license was not presented to Tri-State; that his photograph appeared on his *Virginia* license and that he bore no resemblance to Whichard. |

Subsection (c)

*The Duty*

To maintain a record of: (1) name and address of borrower; (2) the number of the driver's license; and (3) the date and place of issuance of the driver's license.

*The Breach*

| Wentz Testimony | Parker Testimony |
|---|---|
| (1) and (2) performed, (3) ignored. | Willful failure by Tri-State to comply. |

In short, in the subject case there was evidence that

Tri-State deliberately placed Whichard in the driver's seat in willful disregard of the statute. It thereby set in motion the chain of events that directly produced harm to the appellee. Whichard was so placed in the driver's seat without inquiry as to his driving competence. Under the circumstances shown here such inquiry was mandated. There was direct testimony by Parker that, "He [Whichard] was not too good with a truck." We are not permitted to assume that appropriate inquiry prior to rental would have produced differing evidence. That Tri-State's Vice President was aware of the potential danger incident to the conduct of its business, is shown by the following excerpt from the record:

"Q Don't you instruct the people who work for you that big trucks are dangerous out on the highway?

A Yes I do. I think everybody realizes that." [6]

We hold that there was legally sufficient evidence to show that Tri-State violated the provisions of § 8-103 (114) and that such violation was evidence of negligence. We hold also, that the circumstances of the entrustment to Whichard, as shown by competent testimony, would require submission to the jury of the question whether the violation of the statute was a probable cause of the harm to the appellee.

## THE CHARGE

### (As to Negligent Entrustment)

The brief of appellant declares (p. 21): "The trial judge gave the jury two instructions as to what the legal doctrine of negligent entrustment meant. The first instruction was that the term 'negligent entrustment' was basically a meaning of both words in that legal term of art, *i.e.*, negligent entrustment * * * as follows: 'The plaintiff, in

---

6. In at least two cases the Court of Appeals of Maryland has emphasized in negligent entrustment cases that trucks require a greater skill in their operation than do passenger automobiles. *Snowhite v. State, use of Tennant,* 243 Md. 291, 315, 221 A. 2d 342, 355; *Curley v. General Valet Service,* 270 Md. 248, 266, 311 A. 2d 231, 241.

order to prevail, must prove, as I have said, by a preponderance of the evidence that the act of entrustment, that is the rental of the vehicle involved in the accident, was done in a negligent fashion.'" The brief then acknowledges (p. 22) that, "Later the Court gave the jury a correct instruction as to what 'negligent entrustment' meant." He then complains that the two instructions were "likely to confuse the jury." We see nothing of conflict in the two parts of the charge. Taken as a whole, the charge fairly presented the issues which the evidence required to be submitted to the jury. That is all that was required. *Jones v. Federal Paper Board Company,* 252 Md. 475, 485, 250 A. 2d 653, 659.

### *(As to § 117 (8-101))*

At the time of the rental of the subject vehicle, § 117 (now 8-101) imposed upon renters of automobiles and trucks an obligation to provide insurance that: *"shall cover the person owning such vehicle and every person using or operating a vehicle under a rental agreement * * *."* [7]

It will be observed that the section makes no exception as to rentals to trucking companies — the suggested basis for Tri-State's failure to assure such insurance in the subject case.

---

7. Amendments to the section have not departed from this basic requirement. § 8-101 as it now appears (Code 1974 Cumulative Supplement) reads as follows:

"8-101. Owners of for-rent vehicles to certify proof of financial responsibility.

(a) The Administration shall not register any motor vehicle, trailer or semitrailer to be rented, unless and until the person owning such vehicle shall certify financial responsibility as provided by this article, and such certification has been accepted by the Administration, and the Administration shall suspend the registration of any such vehicle whenever the Administration ascertains that such owner has failed, or is unable, to maintain such proof of financial responsibility.

(b) Certification required under this section shall cover the person owning such vehicle and every person using or operating the vehicle with the permission of the owner or lessee, notwithstanding any provision of the rental agreement to the contrary.

(c) Any person violating the provisions of this section shall be deemed guilty of a misdemeanor."

The trial judge explained his inclusion of a reference to § 117 (now 8-101) in his general charge upon the issue of negligence as follows:

> "The reason the Court gave that instruction, Mr. Salmon, is the Court is of the opinion that in accordance with the testimony of your client, Mr. Wentz, to the effect that there was no insurance on the vehicle at the time that it was leased to a person alleged to be C. Parker, that that violation, along with other statutory violations — and the jury might very well determine from the testimony of Mr. Parker — as to the procurement by Johnnie Hicks, or Monk, also known as Whichard, of this vehicle, particularly in view of the fact that Parker testified that he literally bribed someone at Tri-State to put his partner's license number down, and give him that person for the vehicle, which the Court considered if the jury believed that testimony, would be a willful, direct, wanton act of disregard of the statutes. That, coupled with the statement of your client that there was no insurance, may bear upon the Court's theory of negligent entrustment, that Tri-State did not act as a reasonable, prudent person, under the circumstances, in leasing property or entrusting a truck to this individual. And as a result of the financial lack and other violations, cumulative in effect, the trier of the facts may feel that it was a violation and a negligent entrustment by your company.
>
> "I'm stating this so there won't be any misunderstanding, in the event of an appeal, that the Court considered that it was cumulative acts which should be considered by the jury under the peculiar facts of this case."

The charge itself clearly so limited the effective influence of § 117.

Similar statutes have been held to have been intended "to

protect the public from the negligent operation of motor vehicles by irresponsible drivers and to assure the ability of operators and owners to respond in damages to persons who may suffer as the result of such negligence, * * *." *Erie Ins. Exch. v. Gosnell,* 246 Md. 724, 729, 230 A. 2d 467, 470.

In the course of his discussion under the heading, "Imputed Negligence" Prosser, Law of Torts, Ch. 12, § 73 (4th Ed. HB, 1971) says at 481:

> "As in the case of the doctrine of joint enterprise, the advent of the automobile has been responsible for a number of other extensions of the principle of vicarious liability. The alarming increase in traffic accidents, together with the frequent financial irresponsibility of the individual driving the car, has led to a search for some basis for imposing liability upon the owner of the vehicle, even though he is free from negligence himself. Bluntly put, it is felt that, since automobiles are expensive, the owner is more likely to be able to pay any damages than the driver, who may be entirely impecunious; and that the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class. Beyond this, also, is the feeling that one who originates such a danger by setting the car upon the highway in the first instance should be held responsible for the negligence of the person to whom he entrusts it; and also the reasonable idea that the assumption of such responsibility is the price which the owner should be required to pay for the privilege of having the car operated, at the cost of the taxpayers, over the expensive highways of the state."

We do not find it necessary to espouse fully the doctrine enunciated by Prosser, *supra,* but we do hold that under the extraordinary conditions shown by this record, the acknowledged breach of § 117 (8-101) by Tri-State bears

upon the ultimate issue whether Tri-State exercised reasonable care in the transaction relating to the entrustment of this truck to Whichard.

## Reference to Insurance

In the course of his testimony the witness Wentz acknowledged that he had requested Parker to "give us a certificate of insurance" prior to the date of the subject truck rental and that he knew on the latter date that such a certificate had not been furnished. Wentz further acknowledged that, "[a]ccording to the contract we do not include insurance for trucking companies." Appellant suggests that this evidence was improperly admitted and constituted reversible error.

We have heretofore stated that the question of whether § 117 was violated was a matter of substance under the circumstances of this case. The evidence was admissible on that ground. In addition, the evidence was admissible because the credibility of the witnesses Wentz and Parker upon the question whether Tri-State had violated § 8-103 (114) was a factor of crucial importance in the trial in the lower court. Wentz's position essentially had been that Tri-State had substantially complied with § 114 (8-103). Parker's position, on the other hand, was that the section had been willfully ignored by Tri-State. Thus, the acknowledged violation by Tri-State of a second statute imposing industry standards bore upon the question of the credibility of Wentz vis-a-vis Parker in the determination whether there had been a violation of § 114 (8-103). McCormick, Evidence, H.B. Ch. 19, § 168, p. 356 (1954). We see no error.

*Judgment affirmed.*
*Appellant to pay the costs.*