Galati *v.* Potamkin Chevrolet Co., Inc.,
Appellant.

Argued March 27, 1962.   Before RHODES, P. J.,
ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY,
and FLOOD, JJ.

*Michael von Moschzisker*, with him *Michael L. Temin*, and *Wolf, Block, Schorr and Solis-Cohen*, for appellant.

*Samuel B. Brenner*, with him *Brenner and Brenner*, for appellee.

OPINION BY FLOOD, J., June 13, 1962:

The plaintiff brought suit in equity to rescind an installment sales contract covering the purchase of an automobile alleging that the defendant completed the blanks in the instrument in an excessive amount, contrary to the terms of a prior oral agreement, as a result of which he became obligated to pay $427.42 more than the amount which would have been payable under his oral agreement with the defendant. In his complaint he requested that the contract be declared fraudulent and void and that the defendant be directed to refund to him $1,717.51, together with interest from July 12, 1957.

The chancellor found that the plaintiff agreed to purchase the automobile for $1800, that he paid $300 in cash and received credit for $400 as a trade-in allowance for another vehicle so that the balance due was $1100 plus financing and other charges, that the plaintiff signed an installment sales contract in blank, and that it was later filled in by the defendant for $1538.10 plus financing and other charges. The chancellor further found that, while this may have been a mistake in the first instance, the defendant thereafter refused to rectify the mistake and tried to collect the full amount due. The court, holding that these cir-

cumstances entitled the plaintiff to rescind the contract, ordered the defendant to pay the plaintiff the sum of $1,639.14, which represents $700 paid to the defendant on account plus $939.14 paid in installments under the contract. The court en banc affirmed the adjudication and decree of the chancellor. The defendant has appealed upon the ground that the plaintiff lost his right to rescind by failing to notify the defendant of his decision within a reasonable time after learning the facts and by continuing to use the vehicle and to make payments with knowledge of the fraud or mistake.

The plaintiff discovered that he was being charged a price in excess of what he alleged had been agreed upon or about August 1, 1957, approximately two weeks after the contract had been entered into. At this time he received notification of the amount due from the bank which had purchased the installment sales contract from the defendant. On August 20, 1957, the plaintiff paid the first installment, due August 18, 1957. Thereafter he continued to make payments, the last of which, covering the installment due for the month of August 1958, was made on October 10, 1958. On November 10, 1958, the automobile was repossessed. At this time the installment payable in the month of September 1958 was in default. On August 7, 1959, the plaintiff instituted this action to rescind the contract.

The plaintiff seeks to avoid the effect of the long delay between his discovery of the excess charge and the institution of this action to rescind by testimony that he got in touch with the salesman with whom he had negotiated the deal immediately after he learned of the higher price from the bank, that the salesman told him "there was a mistake and we'll straighten it out", and that the plaintiff, at intervals, continued to get in touch with the salesman, who constantly promised to remedy the matter.

The chancellor found that plaintiff received a copy of the completed contract on or about May 15, 1958, that he subsequently discussed the matter of an adjustment with the defendant's salesman on four or five occasions, that he continued to make payments to the bank in reliance upon the salesman's statement that "he would take care of it", and that he stopped making payments on the car only when the salesman finally told him that he did not intend to do anything about the matter.

However, the plaintiff's testimony is clear that his conversations with the salesman occurred on or prior to May 17, 1958, the date when he received an invoice and a copy of the completed installment sales contract. The plaintiff testified that he went to the defendant's place of business after he received those papers, that he advised someone present he was going to get in touch with his lawyer, and that he was told: "I don't care what you're going to do." The plaintiff's wife testified that, upon receiving the envelope postmarked May 16, 1958, containing these documents, she called the salesman who handled the transaction. She testified: "And, I got frightened, you know, so I called him up and he was then disgusted with me, and he says: 'Do what you want to do', he didn't care, so I went back to the bank".

There was no testimony of any offer by the defendant to adjust the matter of price after May 17, 1958. Therefore, the finding of the chancellor that the plaintiff continued to make payments after May 1958 in reliance upon statements by the salesman is without support in the record. On the contrary, it affirmatively appears from the plaintiff's own testimony and that of his wife that he made five payments aggregating $394.25 after May 17, 1958, with full knowledge of the fact that the defendant intended to stand on the contract as written and refused to make any adjustment in the price.

When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and, if he elects to rescind, to notify the other party within a reasonable time so that the rescission may be accomplished at a time when the parties may still be restored, as nearly as possible, to their original positions. *Muehlhof v. Boltz,* 215 Pa. 124, 64 A. 427 (1906) (seven months held too long) ; *Zeller v. Haupt,* 41 Pa. Superior Ct. 647 (1910) (one week held not too long).[1] In the present case prompt restoration of the parties to their original positions would have permitted the defendant to reacquire possession of the vehicle, and would have prevented plaintiff's using the vehicle rent-free for a period of from five to fifteen months. The grafting of new equities upon a transaction by the passage of time is one of the reasons why the right of rescission must be asserted within a reasonable time after the discovery of the fraud. *Rarry v. Shimek,* 360 Pa. 315, 62 A. 2d 46 (1948).

A buyer is not entitled to a return of the price unless promptly after knowledge of the breach he returns or offers to return what he has received in substantially as good condition as when it was transferred to him. Restatement, Contracts, §349(1). None of the exceptions to this rule, contained in §349(2), are applicable here. Illustration 2 to §349(1) reads: "A sells an automobile to B for cash. After driving it for a few hundred miles, B learns of such a substantial breach of warranty by A as justifies rescission; and he at once tenders the return of the machine and demands his money back, the tender being conditioned on repayment. The slight use of the machine by B did not substantially affect its physical condition, although it considerably reduced its market value. B can get judg-

---

[1] In this case the court cited cases in which one year, five months and four months were held to constitute unreasonable delays.

ment for restitution of the price paid. Had B continued to make use of the machine after knowledge of the breach, he could not get judgment for his money back."

In *Ajamian v. Schlanger*, 20 N.J. Super. 246, 89 A. 2d 702 (App. Div. 1952), the relevant facts of which are similar to those in the instant case, the plaintiff sought rescission on the ground of fraud. In ruling that he had forfeited his right to rescind the court stated (Id. at page 249, 89 A. 2d at page 704) : "A party entitled to rescission on the ground of fraud may either avoid the transaction or confirm it; he cannot do both; and once he elects, he must abide by his decision. When he has discovered the fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, he must thereupon act with diligence and without delay if he desires to rescind; and the transaction will be deemed ratified if he does any material act which assumes the transaction is valid. His continued dealing with the property purchased, after knowledge of the fraud, as if the contract were subsisting and binding, is evidence of an election to treat the contract as valid; so, also, is the payment of purchase money after such knowledge. . . . Since this plaintiff, with full knowledge of the alleged fraud, continued for more than six months to deal with the property as his own, and made the monthly payments on the purchase price, his actions afford plenary evidence of an election to abide by the contract; and once made, this election is irrevocable."

Certainly it was up to the plaintiff here to rescind within a reasonable time after May 17, 1958, when he learned that his dispute with the defendant could not amicably be resolved. Far from doing so, the plaintiff retained the automobile, continued to make payments on it and continued to use if for a period of more than five months. Whatever the effect was of plaintiff's

conduct before, his conduct subsequent to May 17, 1958, constituted a binding election to affirm his transaction with the defendant, barring rescission. Therefore, the plaintiff's recovery, if any, must be limited to the difference between the amount which he would have been obligated to pay if the contract had been completed properly and the amount due under the instrument as filled in by the defendant, a sum in the neighborhood of $400.

The decree of the court below is reversed and the record is remanded for further proceedings consistent with this opinion.