**Robert MOSHER, and Mary Lou Mosher, his wife**

v.

**SOUTHRIDGE ASSOCIATES, INC.**

**Civ. A. No. 82–210 ERIE.**

United States District Court, W.D. Pennsylvania.

Dec. 21, 1982.

See also, D.C., 552 F.Supp. 1226.

Eugene J. Brew, Jr., Erie, Pa., for plaintiff.

Richard A. Bird, President, pro se.

Richard W. Perhacs, Erie, Pa., for defendants.

OPINION AND ORDER

WEBER, District Judge.

At the close of the pleadings in the above matter the defendant filed a motion for summary judgment. The court granted the motion by its opinion and order of December 1, 1982, 552 F.Supp. 1226, and plain-

tiffs' complaint was dismissed in its entirety. This lawsuit arose out of the sale of a condominium to the plaintiffs by the defendant. The plaintiffs have filed an amended complaint in which it reasserts a claim under the Securities Act of 1933. The court previously dismissed an earlier claim under the same act. The court determined that the sale of a condominium was not the sale of a security for purposes of the application of the Act. Defendant has now filed a motion to dismiss contending that the amended complaint fails to state a claim upon which relief may be granted.

We now consider whether plaintiffs have alleged sufficient facts which if taken as true would sustain a cause of action under the Securities Act. To do this the plaintiffs are required to allege sufficient facts to indicate that the transaction surrounding the purchase of the condominium involved the sale of a security. The plaintiffs have specifically averred that the purchase of the condominium was made for investment purposes. *See* Plaintiffs' Amended Complaint, ¶ 5. The plaintiffs were furnished a 113 page document titled "Prospectus" (Offering Circular) regarding the condominium unit. *See* Plaintiffs' Amended Complaint, ¶ 15. The plaintiffs did not intend to use or occupy the condominium unit, but purchased it for investment purposes. *See* Plaintiffs' Complaint ¶ 22. After the execution of the sales agreement in 1981, plaintiffs corresponded with the defendant or his representatives to discuss the current value of the investment. *See* Plaintiffs' Complaint ¶ 23. Further, the plaintiffs allege at paragraphs 25 thru 28 of their complaint the strongest allegation which would indicate that this is a claim arising from a securities transaction. Plaintiffs aver that the condominium purchased was one of 65 constructed by the defendant and that the plaintiffs purchased the condominium with investment intent at the encouragement of the defendant based on the promises of the defendant that the investment would increase in value because of the defendant's activities in developing, promoting or otherwise managing the investment. The plaintiffs also aver that the investment was one in a common enterprise engaged in for profit.

The question before the court is whether the transaction can be deemed to be an "investment contract" as listed in the definition of a security. See 15 U.S.C.A. § 77b. Investment contracts were construed prior to their inclusion in the Securities Act in the context of many "blue sky" laws that were in existence prior to the passage of the Act. An investment contract came to mean a contract to place capital or lay out money "in a way intended to secure income or profit from its employment" *S.E.C. v. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1945). By its inclusion in the Securities Act, Congress employed a term which had acquired a specific meaning and courts have interpreted investment contracts in a way consistent with this historic interpretation.

In *Howey*, the Court held that an investment contract existed where the seller of orchard realty in Florida offered more than a fee simple in land. The Court noted that the offer was being made to persons residing in distant localities who had no intent to occupy the land and who lacked the equipment or expertise to cultivate or harvest the citrus products. 328 U.S. at 300, 66 S.Ct. at 1103. The management of the enterprise by the sellers was considered essential for the investors to achieve a return on their investments. The court concluded that "all the elements of a profit-seeking business venture are present here." *Id.*

■ The application of the *Howey* test to the subject of condominium offers is further guided by pronouncements of the Securities and Exchange Commission. As a general rule, the offer or sale of condominium property does not by itself constitute a security transaction. *See e.g., SEC No-Action Letter, In re Surftides Condominiums, Inc.* (Feb. 7, 1972), CCH Fed.Sec.L.Rep. 78,-686. In order for the transaction to constitute an "investment contract" the arrangement must include certain collateral agreements. The Commission has articulated the subject matter of the collateral agreements as they relate to condominium sales:

1. The condominiums, with any rental arrangement or similar service, are offered and sold with emphasis on the economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units.

2. The offering of participation in a rental pool arrangement; and

3. The offering of a rental or similar arrangement whereby the purchaser must hold his unit available for rental for any part of the year, and must use an exclusive rental agent, or is otherwise materially restricted in his occupancy or rental of his unit.

SEC Securities Act Release No. 33–5347, 17 C.F.R. 231, 5347, 38 Fed.Reg. 1735 (Jan. 18, 1973) CCH Fed.Sec.L.Rep. 1049.

Adherence to this release is found in the SEC's consideration of a condominium sales arrangement which was found to be outside the definition of a "security", in the SEC No-Action Letter, *Tahoe Racquet Club Condominiums* (Aug. 2, 1970), CCH Fed.Sec.L. Rep. 80,718.

Accordingly, we find certain facts in this case which take the instant transaction outside the definition of a security. First, the purchase of the condominium was not conditioned upon plaintiff's participation in any rental program. Second, the decision to rent or not to rent the condominium notwithstanding plaintiffs' avowed intent, was within plaintiffs' sole discretion, nor were the plaintiffs, in the event they decided to rent the property, bound by the sales agreement to use a particular rental agent to let the property. Third, the agreement between the parties does not contemplate the pooling of rental payments. To that end, plaintiffs' participation in the common enterprise was limited to the actual rental obtained from the rental of their own unit. Finally, there are no restrictions here that would limit plaintiffs' right to use their unit, in addition, it is presumed to have been plaintiffs' responsibility to keep the unit in good repair and condition. *See also* H. Bloomenthal, Securities and Federal Cor-

porate Law § 2.15 (1975), Berman & Stone, *Federal Securities Law and the Sale of Condominiums, Home and Homesites,* 30 Bus.Law 411 (1975).

Accordingly, plaintiffs' securities claim of their Second Amended Complaint will be dismissed along with the pendant state claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).