Monmohan **BHATLA** and Shabnam Bhatla, et al., Plantiffs,

v.

**RESORT DEVELOPMENT CORPORATION et al.,** Defendants.

Civ. A. No. 88–147.

United States District Court, W.D. Pennsylvania.

Aug. 3, 1989.

Joseph H. Reiter, Philadelphia, Pa., Robert Carmody and William A. Carey, Washington, D.C., and Michael P. Malakoff, Pittsburgh, Pa., for plaintiffs.

Glenn Douglas Dolfi, Pittsburgh, Pa., pro se.

Joseph F. Moore, Jr., Philadelphia, Pa., for Mellon Bank.

Thomas Allen, Pittsburgh, Pa.

Kel M. Damsgaard, Philadelphia, Pa., for U.S. Capital.

Richard Klaber, Pittsburgh, Pa.

## OPINION

D. BROOKS SMITH, District Judge.

This complicated piece of litigation is before this Court after the filing by all the defendants of a Motion to Dismiss all counts of the Second Amended Complaint.[1] The Second Amended Complaint contains four counts: a RICO claim, and claims for fraud, breach of contract and rescission. For the reasons hereinafter stated we grant, in part, the Motion to Dismiss.

This action arises out of the development of a condominium project at a ski resort in the Allegheny Mountains of Western Pennsylvania. Plaintiffs purchased condominiums at this project. Subsequently, the plaintiffs discovered they did not get what they thought they had bargained for in purchasing their condominiums. Hence, this suit against the fifteen defendants.

Plaintiffs purchased their condominiums from Resort Investment Corporation (Resort).[2] Resort was the corporation responsible for the construction of the condominium project. Resort's parent corporation, U.S. Capital Corporation, (U.S. Capital) had acquired the land for the project and had been responsible for financing, developing and marketing the condominiums. Three other U.S. Capital subsidiaries were involved in this transaction. These subsidiaries were Capital Acceptance Corporation (CAC), U.S. Capital Mortgage Corporation (USCM) and First Capital Finance Corporation (First Capital). Their involvement related to the initial financing and mortgage services for new condominium owners. The six individual defendants also were associated with defendant U.S. Capital and its subsidiaries.[3] The remaining four defendants are all associated with Mellon Bank, N.A.[4] The Mellon defendants provided construction financing for Resort's construction of the condominium.

The condominium project was marketed to potential purchasers in several ways. A mail campaign was initiated with the public offering statement and related sales literature being mailed to potential purchasers. 2d Am.Co. ¶ 64(d)(1). A phone network was established so that sales presentations could be made. *Id.*, ¶ 64(d)(2). Advertisements describing the condominiums also were placed in widely circulated east coast newspapers. 2d Am.Co. ¶ 64(d)(3).

---

1. This matter was originally filed in the Eastern District of Pennsylvania in December 1986. Plaintiffs then amended their complaint before any of the defendants responded. The amended complaint included a RICO claim and counts for fraud, conspiracy to defraud, and breach of contract, as well as a request for injunctive relief. Defendants moved to dismiss on numerous grounds. In response to that motion, the court ordered a more specific statement by plaintiffs. A second amended complaint was then filed and defendants again moved to dismiss the action on several grounds. Venue was determined to be improper and this case was then transferred to the Western District of Pennsylvania where it was assigned to the Honorable Donald E. Ziegler. On November 8, 1988, this matter was reassigned to this Judge.

2. Defendant, Resort Development Corporation was formerly Resort Investment Corporation. Second Amended Complaint, para. 8 (hereinafter referred to as 2d Am.Co. for citation purposes).

3. We will refer to these eleven defendants collectively as the U.S. Capital defendants.

4. The Mellon defendants include: Mellon Financial Services Corporation No. 7, Mellon Financial Services Corporation No. 11, Mellon Financial Services Corporation No. 1, and Mellon Bank, N.A. We will refer to this group as the Mellon defendants.

The potential purchasers netted by these marketing efforts received a sales presentation describing the condominium. Within this presentation, an exclusive rental agreement was included with the condominiums. This rental agreement would require that the owners pay a portion of their rentals to U.S. Capital. 2d Am.Co. ¶ 64(d)(6). In turn, a major hotel chain had been retained to handle condominium rentals through its 800 phone number. 2d Am.Co. ¶ 64(e)(4).

In addition, the condominiums purchased by plaintiffs were in Phase I of a four phase development. 2d Am.Co. ¶ 63(a). Phase I units would be complemented by further phases which would maintain an appearance consistent with phase I. 2d Am.Co. ¶ 64(b). Condominiums in phase I also would appreciate in value because future units would exceed the price of those being offered for sale. This would assure purchasers a greater resale value and generate greater rental activity. *Id.,* ¶ 64(e)(1) and (2). The condominiums in phase I also were supposed to include as amenities an outdoor pool and tennis courts. 2d Am.Co. ¶ 64(i)(3).

After the plaintiffs purchased their units, however, the sparkle began to fall from the package. The first phase of the condominium was built, but future phases were abandoned. 2d Am.Co. ¶ 64(f). Instead, on the same land that phase II would have been built, the U.S. Capital defendants planned to construct a new and different condominium project. This new project would consist of lower priced efficiency units called ski chalets. 2d Am.Co. ¶ 64(h). These efficiency units allegedly eroded the value of the plaintiff's condominiums in phase I, as well as their potential rental prospects.

Plaintiffs claim that the defendants' substitution of the lower priced efficiency units for subsequent phases of the condominium development was fraudulent. Plaintiffs' claim is based on the fact that defendants' actions and representations induced plaintiffs to believe that a specific plan existed to regularly increase prices. This plan would prevent future units from being sold at prices below those paid by plaintiffs. 2d Am.Co. ¶ 64(e)(2). This representation was further buttressed by a sales agent who told plaintiffs that Phase II would be built upon the closing of Phase I. *See* Plaintiffs' Opposition to Motions to Dismiss, p. 6 n. 2. In addition, plaintiffs note that the amended Public Offering Statement, received by some of the plaintiffs indicated that there were no changes to the condominium project except for the completion date of one of the buildings in Phase I. 2d Am.Co. ¶ 64(f). Plaintiffs claim that had they known the representations regarding the condominiums were false, they would not have purchased condominium units. 2d Am.Co. ¶ 64(c).

Before we reach the merits of defendants' Motions to Dismiss, we note our procedural posture in resolving these issues. Federal Rule of Civil Procedure 12(b) requires that a motion to dismiss be treated as one for summary judgment if matters outside the pleadings are presented to, and not excluded by, the court. Fed. R.Civ.P. 12(b). The parties have extensively briefed the motions and filed numerous exhibits, affidavits, and excerpts from depositions in support of their positions. We, therefore, will treat this motion as one for summary judgment. Accordingly, judgment will be rendered if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## I. RICO

The plaintiffs' RICO claim avers violations of section 1962(a), (c) & (d). 18 U.S.C. § 1962(a), (c) & (d). We will address each subsection seriatim. Moreover, each subsection will be addressed separately with regard to the U.S. Capital defendants and Mellon defendants.

### A. *§ 1962(a) and the U.S. Capital defendants.*

Subsection (a) of section 1962 provides: It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the

meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

18 U.S.C. § 1962(a). Hence, to assert a cause of action pursuant to § 1962(a), plaintiffs must allege each of the following elements: (1) a person; (2) receipt of income derived from; (3) a pattern of racketeering activity; and (4) said person used or invested the income; (5) in an enterprise engaged in or affecting interstate commerce.

Plaintiffs allege each of these elements in a conclusory fashion in their Second Amended Complaint. Paragraph 81 states

Each of the defendants derived income directly or indirectly from the aforementioned pattern of racketeering activity. Such income was used and invested directly and indirectly by the defendants in the operation of BKS & CC, RDC, U.S. Capital, Capital Acceptance Corporation, Mellon Financial Services Corporations No. 7, 11 and 1 and Mellon Bank, N.A. each of which was an enterprise engaged in and the activities of which, affected interstate commerce....

2d Am.Co. ¶ 81. The U.S. Capital defendants contend, however, that as a matter of law the plaintiffs are unable to show either a "pattern" or "racketeering activity." U.S. Capital also asserts that plaintiffs do not have standing to bring this civil action.

Before we reach the issue of standing, we address whether there is a "pattern" of "racketeering activity." Plaintiffs submit that the racketeering activity consisted of mail, wire and securities fraud, 2d Am.Co. ¶ 78, 79, all of which are included in section 1961's definition of "racketeering activity." 18 U.S.C. § 1961(1)(B) and (C). We address only the allegation of fraud in the sale of securities.[5]

U.S. Capital contends that plaintiffs are unable to establish fraud in the sale of

securities. First, U.S. Capital argues condominium units are not securities. Second, U.S. Capital submits plaintiffs cannot prove justifiable reliance because the alleged oral misrepresentations are contradicted by written statements in the public offering statements and sales agreement. We are unpersuaded by either argument.

First, we address whether the condominiums purchased by plaintiffs can be considered securities. Plaintiffs allege that the condominiums are investment contracts. 2d Am.Co. ¶ 64(d)(6). Investment contracts are included in the definition of security as established in 15 U.S.C. § 77b, but the term itself is undefined. The Supreme Court defined the term "investment contract" in *SEC v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The Court stated that

an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party....

328 U.S. at 298–99, 66 S.Ct. at 1102–03.

The *Howey* definition was applied in conjunction with Securities and Exchange Commission regulations in *Mosher v. Southridge Assoc., Inc.*, 552 F.Supp. 1231 (W.D.Pa.1982), to determine whether the sale of condominium units could be deemed investment contracts. In that case, Judge Weber concluded that a condominium must be sold with certain collateral agreements in order to constitute an investment contract. The subject matter of the collateral agreements, as set forth in the regulations, must pertain to (1) either a rental arrangement producing economic benefits to the purchaser derived from a manager or promoter of the units; (2) participation in a rental pool arrangement; or (3) a rental arrangement whereby the purchaser must hold his unit available for rental for a portion of the year and said rentals are arranged by an exclusive agent. 552 F.Supp. at 1233 (citation omitted). Since the condo-

---

**5.** We do not address whether there is merit to plaintiffs' claim of mail or wire fraud. There-

fore, defendants may raise this issue again once discovery is completed.

miniums were not sold with the collateral agreements, Judge Weber found the condominiums failed to constitute investment contracts.

In the instant case, the plaintiffs allege that there was an exclusive rental agreement by which the purchasers would pay a portion of their rents to U.S. Capital. 2d Am.Co. ¶ 64(d)(6). Plaintiffs also allege that a major hotel chain had been retained to handle rentals through an 800 number. 2d Am.Co. ¶ 64(e)(4). These allegations are sufficient to indicate that the condominiums may have been offered [6] with a rental arrangement whereby the purchasers would benefit economically from the managerial efforts of another. Since this meets the *Howey* criteria for an investment contract we conclude that the condominiums may be securities. Next, we address whether or not there was fraud in the sale of securities.

U.S. Capital contends that plaintiffs cannot prove fraud in the sale of securities because the plaintiffs did not justifiably rely upon the alleged misrepresentations. U.S. Capital submits that justifiable reliance is absent because the public offering documents state that future phases "need not be built." Appendix to Defendants' Motion to Dismiss. 2d Am.Co., Exhibit 1 (hereinafter Defendants' Appendix). In addition, the sales agreement and offering documents provide that information not included in the public offering statement should not be relied on. *Id.,* Exhibit 3.

U.S. Capital bases its argument on the Tenth Circuit's decision in *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511 (10th Cir.1983). The plaintiffs in *Zobrist* had purchased an interest in a coal venture which they had been told was a "sure thing" and had "no risks." A written memorandum serving as a prospectus directly contradicted these oral assurances and specifically expressed the risks attendant to the investment. When the venture appeared to fail the plaintiffs filed suit claiming misrepresentation in the sale of securities. The Court charged the plaintiffs with constructive knowledge of the full and fair disclosures in the memorandum. It then concluded, after considering several other factors, that the plaintiffs' reliance on the "no risk" representation was not justified.

U.S. Capital argues that *Zobrist* stands for the premise that a plaintiff cannot rely upon oral misrepresentations if the misrepresentations conflict with a written document received by the plaintiffs. We do not construe *Zobrist* as broadly as U.S. Capital would urge. The imputation of the information contained in the memorandum in *Zobrist* was due to the fact that the written memorandum expressly contradicted and directly refuted the oral representations. Even then, the imputed knowledge alone did not negate the plaintiffs' reliance. Rather, the plaintiffs' imputed knowledge in conjunction with the fact that the plaintiff was a sophisticated investor, together with the fact that the fraud was not concealed but openly provided to the plaintiffs, collectively provided the bases for the court to hold that the plaintiffs' reliance was unjustified.

In reaching its decision in *Zobrist,* the court followed its own "view that while the full and fair disclosure of information in the ...Memorandum is a relevant factor which favors the defendants here, such disclosure is not determinative ..." of whether reliance was justified. 708 F.2d at 1517. Similarly, although the contents of the public offering statement and the sales agreement are relevant in the instant case, the contents are not determinative of whether plaintiffs' reliance was justified. The oral representations do not directly conflict with the written documents. In fact, it is quite possible for both statements to be true at the same time.[7] Moreover, the instant ac-

---

6. We note the absence of any such agreement in writing at this juncture. Although we do not pass on the impact of this fact presently, we note it may be an item to be addressed at a future point in the proceedings.

7. That is, the written statement that future phases need not be built can coexist with the oral statements representing that the plaintiffs' condominiums would be part of a project that had steadily increasing values and an active rental business.

tion does not present plaintiffs as highly sophisticated investors.

Lastly, there remains the possibility that U.S. Capital concealed its fraud. Plaintiffs assert that inquiries regarding the existence of a new lower priced condominium project were flatly denied. Plaintiffs' Brf., p. 9, n. 5. The public offering statement for the lower priced condominium unit also was allegedly delayed in release, thereby placing it in circulation only after plaintiffs had purchased their units. These facts are subject to a reasonable inference that U.S. Capital did not want plaintiffs to be aware of this new lower priced condominium project. For these reasons, we decline to find as a matter of law that plaintiffs did not justifiably rely upon the alleged misrepresentations. This will be a question for the finder of fact.[8]

■ In conclusion, with regard to U.S. Capital's arguments that plaintiffs have failed to allege racketeering activity, we find that plaintiffs have demonstrated that a genuine issue of fact exists regarding whether there was fraud in the sale of securities. Judgment cannot be entered solely on this argument.

■ Moreover, judgment cannot be entered for U.S. Capital on the basis that plaintiffs have failed to allege a "pattern" of racketeering activity. Several factors must be considered to determine if there is a "pattern" of racketeering activity. *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36 (3rd Cir.1987). These include: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators and the character of unlawful activity." *Id.* at 39. In the instant case, the alleged misrepresentations were made to the plaintiffs, the purchasers of thirty-three condominium units in all. The misrepresentations were similar in nature and made over several months' time in late 1982 and early 1983. These facts are sufficient to create an issue of fact regarding a pattern of activity. *See Barticheck*, 832 F.2d at 36; *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666 (3rd Cir.1988).

Since we have determined that issues of fact exist regarding the elements of a pattern of racketeering activity, we go on to address whether plaintiffs have standing to assert their RICO claim pursuant to § 1962(a) against the U.S. Capital defendants.

Section 1964(c) provides that

[a]ny person injured in his business or property by reason of a violation of 1962 of this chapter may sue ...

18 U.S.C. § 1964(c). U.S. Capital argues that section 1964(c) requires plaintiffs to show that they were injured in their business or property by reason of defendants' investment of income derived from a pattern of racketeering in order to assert a RICO claim under § 1962(a). U.S. Capital contends that plaintiffs fail to claim any injury of this nature. For this reason, U.S. Capital urges we grant judgment in its favor on this claim.

U.S. Capital relies on *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107 (E.D.Pa.1986) as support for its position. *Gilbert* presented a RICO claim under section 1962(a) based upon the plaintiffs' allegation that they were fraudulently induced to purchase securities. The Court found that the plaintiffs lacked standing under that section because "it is inconceivable that plaintiffs suffered any injury as a result of any violation of § 1962(a) which might have occurred ... [W]hether the defendant did or did not invest the proceeds in a business affecting commerce cannot have been causally related to any injury to plaintiffs." 643 F.Supp. at 109.

The Court's decision in *Gilbert* is consistent with the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima* the Court addressed the breadth of section 1964(c), 18 U.S.C. § 1964(c),

---

**8.** *See Rowe v. Maremont Corporation,* 850 F.2d 1226, 1235 n. 5 (7th Cir.1988) (*Zobrist,* 708 F.2d at 1511, cited as an example of an unusual case

in which the issues of materiality and reliance can be foreclosed as a matter of law by a written statement).

which authorizes a private suit by an individual who has been injured by reason of a violation of section 1962. In particular, *Sedima* presented an alleged violation of § 1962(c). The Court noted that subsections (a), (b) and (c) of § 1962 respectively make it unlawful

> to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c).

473 U.S. at 495, 105 S.Ct. at 3284. Then, with specific reference to subsection (c), the Court required that the plaintiff must allege each of the elements to state a claim because "[c]onducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if ... he has been injured in his business or property by the conduct constituting the violation." *Id.* at 496, 105 S.Ct. at 3285.

Similarly, the conduct constituting a violation under § 1962(a) is not the mere receipt of money derived from a pattern of racketeering activity. Nor can a violation be premised on the investment in an enterprise affecting interstate commerce. Rather, the essence of the violation of § 1962(a) is the use or investment of the tainted money in an enterprise. Therefore, to have standing to assert a RICO claim under § 1962(a) an injury to one's business or property must occur because of the investment of tainted money in an enterprise affecting commerce, the essence of the violation.[9]

■ In the instant case, plaintiffs' pleading of an injury by the investment has been simply in conclusory fashion. See 2d Am.Co. ¶ 81. Plaintiffs have not shown, however, an injury because of the investment of tainted money in an enterprise affecting commerce. Whether the defendants did or did not invest the proceeds from the sale of the condominiums is not causally related to the plaintiffs' alleged injury. That is, the fact that the condominiums are not what were represented to plaintiffs when they purchased their units is not causally related to any investment of the proceeds. For this reason, plaintiffs lack standing to assert a RICO claim based on § 1962(a) against the U.S. Capital defendants.

### B. *1962(a) and the Mellon defendants.*

Although our conclusion that plaintiffs lack standing to assert a RICO claim pursuant to § 1962(a) against the U.S. Capital defendants is equally applicable to the Mellon defendants, we dismiss plaintiffs' RICO actions against the Mellon defendants on other grounds as well. Mellon submits that plaintiffs have failed to plead with specificity Mellon's involvement in mail, wire or securities fraud which would subject it to liability under RICO.

■ Rule 9 requires that "all averments of fraud or ... circumstances constituting fraud ...shall be stated with particularity." Fed.R.Civ.P. 9(b). This pleading requirement is applicable to RICO actions claiming fraud as the racketeering activity. *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 673 (3rd Cir.1988). Hence, some circuits have required the time, place and content of the persons making the misrepresentation. *Bennett v. Berg*, 685 F.2d 1053, 1062 (7th Cir.1982). The Third Circuit, however, recognizes that alternative measures may be used by a plaintiff to provide precision and substance to a claim of fraud. Such measures adequately notify defendants of the miscon-

---

**9.** We recognize that our decision is consistent with the "majority of the reported cases on this issue...." *Mid–State Fertilizer v. Exch. Nat. Bank of Chicago,* 693 F.Supp. 666, 671 (N.D.Ill. 1988). We have carefully analyzed the minority standpoint on this issue as articulated by *Mid-State Fertilizer,* and we respectfully disagree with the view that "the essence of each subsection is still the commission of racketeering ac-

tivity." *Id* at 672. To interpret *Sedima,* 473 U.S. at 479, 105 S.Ct. at 3275, in this fashion would be inconsistent with not only the fact that Congress enacted section 1962 with four distinct subsections, but also with the Supreme Court's holding that "the mere commission of the predicate offenses ..." is not in itself a violation of § 1962. *See Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285.

duct alleged. *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3rd Cir.1984). Nevertheless, a plaintiff's averment must include sufficient particularity to identify who made the representations. *Saporito*, 843 F.2d at 675; *Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1362 (3rd Cir.1987); *Eaby v. Richmond*, 561 F.Supp. 131, 136 (E.D.Pa.1983).

In the instant case, the Mellon defendants contend that despite an opportunity to correct their previously defective amended complaint, plaintiffs have failed to allege who made the representations for which the Mellon defendants should be liable. A cursory review of the Second Amended Complaint reveals numerous allegations regarding "Defendants" collectively without further specification.[10] Mellon also submits that even when plaintiffs have narrowed this broad reference they fail to do so with any greater specificity than "Mellon Defendants." On this basis, Mellon urges this Court to dismiss plaintiff's Second Amended Complaint.

As support for their position, Mellon relies on *Ethanol Partners v. Wiener, Zuckerbrot, Weiss*, 635 F.Supp. 18 (E.D.Pa. 1985). The plaintiffs in *Ethanol Partners* alleged defendants had violated RICO and federal securities laws. Defendants asserted that the complaint was not plead with the specificity required by Federal Rule of Civil Procedure § 9(b). The Court agreed with defendants. It characterized the plaintiffs' complaint as a 'shotgun' approach which failed to meet the particularity requirement of Rule 9. Since this was the plaintiffs' first complaint, the Court granted the motion to dismiss with leave to file an amended complaint. Plaintiffs were specifically ordered by the Court to include the time, place, subject matter of the fraudulent statements and the individuals who made the statements. The identity of the persons who made the statements was essential because the plaintiffs had grouped all the defendants together, a group which included accounting firms, law firms and consultants.

Most recently, the Third Circuit affirmed the dismissal of a RICO action in which the plaintiffs failed to plead who the persons were who had made the fraudulent representations. *Saporito*, 843 F.2d at 666. In *Saporito v. Combustion Engineering, Inc.*, the Third Circuit affirmed the principle that civil RICO actions based on a scheme to defraud must "be pleaded with greater particularity than other pleadings." *Id.* at 675. The Court did not depart from its previous holding in *Seville*, 742 F.2d at 786, which recognized that Rule 9(b)'s pleading requirement did not always require allegations of date, place or time. Rather, the Third Circuit distinguished the complaint in *Seville* as one which "indicated who made the representations to whom, and the general content of the representations." *Saporito*, 843 F.2d at 675. In the absence of allegations specifying who made the statements, however, in *Saporito* the circuit affirmed the district court's dismissal with leave to amend.

Similarly, the Second Circuit has affirmed the dismissal of an action which failed to meet Rule 9(b)'s pleading requirements. *Denny v. Barber*, 576 F.2d 465 (2nd Cir.1978). *Denny* presented an action claiming fraud in the sale of securities. The initial complaint was dismissed with leave to amend because it failed to identify the statements alleged to be false and misleading. The amended complaint also was dismissed, but with prejudice. The Second Circuit reasoned that the amended complaint failed to identify the alleged false statements, a deficiency which plaintiff's counsel had notice of in light of the dismissal of the initial complaint. Consequently, the Circuit Court concluded that plaintiffs had no right to a second amendment because "this is not a case where 'justice so requires'...." 576 F.2d at 471.

In the instant case, plaintiffs initially filed a complaint on December 5, 1986. Plaintiffs then filed an amended complaint

---

**10.** *See* Second Amended Complaint, paragraphs 57, 58, 59, 60, 61(c), 62, 63, 64, 66, 67, 68, 78, 79, 80, 81, 82, 83, 87, 89. Many of these paragraphs also contain sub-paragraphs which also collectively refer to "defendants."

on January 13, 1987. Plaintiffs' amended complaint was met by a motion to dismiss and a motion for a more definite statement. On June 3, 1987, the Eastern District Court dismissed plaintiffs' complaint with leave to amend. Plaintiffs were ordered to "set forth with particularity the alleged acts of fraud committed by *each defendant....*" *Bhatla v. Resort Development Corp.*, C.A. No. 88–147 (E.D.Pa. June 6, 1987) (emphasis added). Significantly, plaintiffs' deficient amended complaint also repeatedly grouped all the defendants together.

■ We conclude that plaintiffs' Second Amended Complaint fails not only to comply with the previous order dismissing the amended complaint, but also to satisfy the particularity requirement of Rule 9. Plaintiffs' Second Amended Complaint alleges that

the Defendants knowingly and willfully conspired with each other and with others presently unknown to defraud Plaintiffs in connection with their purchases of condominium units in Phase I of BKS & CC by:

(a) making false and fraudulent written and oral pretenses, representations and promises to them;

(b) submitting false and misleading written and oral statements of material fact to them; and,

(c) concealing material facts from them.

2d Am.Co. para. 62. Plaintiffs fail to clarify at any point in the Second Amended Complaint who purportedly committed the acts attributable to Mellon.

■ Nor do we believe plaintiffs should be afforded yet another opportunity to amend their defective second amended complaint. Plaintiffs were notified by the Court Order of June 3, 1987, of the deficiencies of their pleadings. Despite this notice, and ample time for discovery, plaintiffs have utterly failed to set forth any alleged acts of fraud by each defendant.[11] *See Eaby v. Richmond*, 561 F.Supp. at 137 (motion to dismiss RICO claim denied, and plaintiffs afforded opportunity to take discovery and amend *initial* complaint). Accordingly, we will dismiss plaintiffs' RICO claims pursuant to § 1962(a), (c) and (d) against the Mellon defendants.

### C. *§ 1962(c) and the U.S. Capital defendants.*

Subsection (c) of § 1962 provides

[I]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

18 U.S.C. § 1962(c). Hence, in order to state a cause of action a plaintiff must allege 1) a person; 2) employed by or associated with; 3) an enterprise engaged in or affecting interstate commerce; 4) and said person conducts or participates, directly or indirectly in that enterprise's affairs; 5) through a pattern; 6) of racketeering activity.

Plaintiffs have alleged each of the above elements in a conclusory fashion. Paragraph 80 of Plaintiffs' Second Amended Complaint states:

[a]ll of the defendants were associated in fact with each other and by agreement they were associated with, had continuing duties in, and conducted and participated directly and indirectly in the affair of BKS & CC, an enterprise engaged in, and the activities of which affected interstate commerce.

Plaintiffs' allegations basically relate an aggressive marketing and selling approach. The U.S. Capital defendants are the developers, builders, and marketers of the project. Hence, plaintiffs' allegations sufficiently identify who the speakers were. Mellon's involvement, however, was as a financier. Thus it is impossible to discern who would have made misrepresentations regarding the condominiums.

11. We recognize that the U.S. Capital defendants also have asserted that plaintiffs' RICO claims should be dismissed for failure to plead with the requisite specificity. We are not persuaded by the U.S. Capital defendants' argument. We believe the facts alleged and the evidentiary material submitted regarding this motion adequately put the U.S. Capital defendants on notice of the misconduct with which they are charged.

... Defendants have conducted their own affairs and the affairs of BKS & CC through a separate pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

2d Am.Co. para. 80. U.S. Capital asserts this allegation is also inadequate to state a RICO cause of action. U.S. Capital contends that BKS & CC, the condominium in which plaintiffs have purchased units, cannot be an enterprise for purposes of a § 1962(c) claim. In addition, U.S. Capital again submits that plaintiffs have failed to establish either a pattern or racketeering activity.

Inasmuch as we have determined that a genuine issue of fact exists regarding U.S. Capital's involvement in a pattern of racketeering activity, we address only U.S. Capital's argument regarding whether BKS & CC can be an enterprise. U.S. Capital asserts that the collection of buildings representing BKS & CC cannot in any way be construed as a RICO enterprise. U.S. Capital relies on the Eastern District Court of Pennsylvania's decision *In re Catanella & E.F. Hutton and Co.*, 583 F.Supp. 1388 (E.D.Pa.1984). The Eastern District Court refused to construe a securities account as a RICO enterprise in *In re Catanella, supra.* The Court stated that there was "[n]o conceivable" way a securities account could qualify as an enterprise as defined by law. *Id.* at 1426. Enterprise is defined in § 1961(4) as follows:

> "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

18 U.S.C. § 1961(4).

■ At first blush, U.S. Capital's argument is cogent. But, BKS & CC is more than a collection of buildings. It is a legal entity which required for its creation and operation plans and specifications regarding the construction of the buildings. In addition, a proposed first budget had to be established. Defendants' Appendix, Exhibit A, p. 1. Also, certain common elements were to be controlled and managed by unit owners. Defendants' Appendix, Exhibit A, p. 2. Hence, portions of the condominium are separately owned and the remainder is commonly owned by the unit owners. *See* 68 Pa.C.S.A. § 3103. Therefore, the condominium also represents an "association" of unit owners. We conclude the plaintiffs have alleged a RICO enterprise as defined by § 1961(4). 18 U.S.C. § 1961(4).[12]

■ In light of our conclusion, we find plaintiffs have adequately alleged a cause of action under § 1962(c) against the U.S. Capital defendants. That is, each U.S. Capital defendant represents the person who was associated with [13] BKS & CC and conducted the condominium's affairs through a pattern of racketeering activity by fraudulently selling condominium units.

### D. *§ 1962(d) and the U.S. Capital defendants.*

Finally, we arrive at the last RICO claim, plaintiffs' action based on § 1962(d). 18 U.S.C. § 1962(d). U.S. Capital argues that inasmuch as plaintiffs' substantive claims under § 1962(a) or (c) are deficient, plaintiffs' § 1962(d) claim also must fail. U.S. Capital also submits that plaintiffs allege only that the defendants "conspired to commit the predicate acts" which is insufficient to establish a RICO conspiracy.

■ Plaintiffs' claim under § 1962(c) against the U.S. Capital defendants, how-

**12.** We recognize that an enterprise must be engaged in or affect interstate commerce. Although we have not addressed this aspect in the body of our opinion, we find that BKS & CC is sufficiently connected with interstate commerce to satisfy this jurisdictional element. In *United States v. Mannino*, 635 F.2d 110 (2d Cir.1980), the second circuit "upheld a jury instruction that interstate commerce was affected if the defendant who resided in New York purchased a house in New Jersey ..." *United States v. Barton*, 647 F.2d 224 (2d 1981) (*citing Mannino*, 635 F.2d at 110). So too, interstate commerce was affected when several out of state plaintiffs purchased condominiums at this resort in Pennsylvania.

**13.** We note that the U.S. Capital defendants are associated with BKS & CC by virtue of their development, marketing, selling and financing the condominiums. *See U.S. v. Yonan*, 800 F.2d 164 (7th Cir.1986).

ever, is not defective. We, therefore, will not dismiss plaintiffs' RICO claim pursuant to § 1962(d) on that basis. Nor will we dismiss on the basis that plaintiffs' pleading in this regard is deficient. Rather, we believe this issue may more appropriately be raised in a summary judgment motion.[14] We proceed to address the defendants' arguments regarding plaintiffs' other non-RICO counts.[15]

## II. COMMON LAW FRAUD

Count II of Plaintiffs' Second Amended Complaint asserts a cause of action for common law fraud and conspiracy. The U.S. Capital defendants urge this Court to dismiss Count II for several reasons. These include: the failure to state a claim because plaintiffs did not justifiably rely upon any misrepresentations by defendants; the two-year statute of limitations for fraud; and the failure to plead their cause of action for fraud with specificity as required by Federal Rule of Civil Procedure 9(b). The Mellon defendants join in this Motion To Dismiss and assert each of the U.S. Capital defendants' arguments. The Mellon defendants further contend that plaintiffs also failed to state a claim against them because the Mellon defendants did not make any misrepresentations, either by utterance or nondisclosure, and that they lacked the necessary intent.

Because we find the plaintiffs' cause of action for fraud to be barred by the statute of limitations, we will not address the other arguments proffered by defendants.

■ A cause of action for fraud does not accrue until "the fraud has been discovered by the exercise of due diligence." *Rothman v. Fillette*, 503 Pa. 259, 264–265, n. 3, 469 A.2d 543, 546 n. 3 (1983). Plain-

tiffs allege that "the plaintiffs learned for the first time in the spring of 1983 of the substitution of the inferior and lower priced ski chalet units...." 2d Am.Co., ¶ 64(h)(5)(i)(1). Plaintiffs further allege that by 1984 practically all the lower priced ski chalets had been sold and the plaintiffs had protested against the auction sale of the remaining units. 2d Am.Co. ¶ 64(j). Since the plaintiffs discovered the alleged fraud between the spring of 1983, and by 1984, their cause of action accrued at that time.

The fact that the plaintiffs' cause of action for fraud accrued in the spring of 1983 requires that the two-year statute of limitations, set forth in 42 Pa.C.S.A. § 5524(7), be applied. This two-year limitations period for fraud became effective on February 18, 1983. 42 Pa.C.S.A. § 5524(7) (1976), amended by Act of December 20, 1982, Pub.L. 1409, No. 326, Art. II, § 201. Prior to February 18, 1983, however, claims for fraud were governed by a six-year statute of limitations. 42 Pa.C.S.A. § 5527. Plaintiffs contend that their claim for fraud is governed by this six-year statute of limitations because the fraud occurred before February 18, 1983.

■ Plaintiffs fail to recognize that it is not when the fraud occurred, but when the cause of action for fraud accrued that determines which statute of limitations applies. The law establishing the two-year limitations period specifically provides that "the amendments to 42 Pa.C.S.A. chapter 55 (relating to limitation of time) effected by this act shall apply only to causes of action which *accrue after* the effective date of this act." Act of Dec. 20, 1982, Pub.L. 1409, No. 326, § 403 (1982), Pa. Laws, 1409, 1440 (emphasis added).

---

**14.** The U.S. Capital defendants also argue that the plaintiffs' RICO claims are time barred. In light of the Third Circuit's pronouncement that "a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate act....", *Keystone Insurance Company v. Houghton*, 863 F.2d 1125 (3rd Cir.1988), we find this argument meritless.

**15.** We note that plaintiffs' RICO conspiracy claim still may fail since U.S. Capital is the parent corporation of Resort, CAC, USCM and First Capital. "Such entities can conspire in violation of RICO no more than they could for antitrust purposes under *Cooperweld*." *Satellite Financial Planning v. First Nat. Bank*, 633 F.Supp. 386, 405 n. 23. (D.Del.1986) (*applying Cooperweld Corp. v. Independence Tube Corp*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)).

This distinction has been recognized by both the Third Circuit and Pennsylvania Courts. *A.J. Cunningham Packing v. Congress Financial Corp.*, 792 F.2d 330 (3rd Cir.1986); *Penturelli v. Spector Cohen Gadon & Rosen*, 640 F.Supp. 868 (E.D. Pa.1986); *Gabriel v. O'Hara*, 368 Pa.Super. 383, 396 n. 21, 534 A.2d 488, 495 n. 21 (1987). Even though the complaint was filed after the effective date of the Act in *A.J. Cunningham Packing, supra*, the Third Circuit held that the six year statute of limitations applied to plaintiffs' claim for fraud because the cause of action accrued in January 1981. *A.J. Cunningham Packing*, 792 F.2d at 330. Likewise, in *Penturelli*, 640 F.Supp. at 868, the six-year limitations period was applied because the cause of action accrued in December 1978.

In the instant case, the two-year statute of limitations for fraud must be applied since the cause of action accrued in the spring of 1983. Plaintiff's complaint, therefore, had to be filed by the spring of 1985. Plaintiffs' complaint was not filed until December 5, 1986. Since plaintiffs' claim for fraud was filed in excess of the two-year limitations period, that claim will be barred.

## III. BREACH OF CONTRACT

Count III of Plaintiffs' Second Amended Complaint asserts a cause of action for breach of contract. Plaintiffs' claim "defendants breached their condominium purchase and sale contracts with plaintiffs." Second Amended Complaint, paragraph 87. The U.S. Capital defendants, as well as the Mellon defendants, urge this court to dismiss this Count against all of the defendants except Resort because Resort is the only defendant which is a party to the contract which was allegedly breached. Resort further argues that this Count should be dismissed because plaintiffs have failed to attach the sales contract to the Second Amended Complaint and to plead what terms were allegedly breached. Furthermore, Resort submits that the terms of the sales contracts could not be breached by the conduct the plaintiffs complain of in this action.

Before we address these arguments, we must determine if the contract even continues to exist. Pennsylvania law recognizes the general rule that an agreement of sale merges into the deed and no recovery may be had based on the earlier agreement. *Valvano v. Galardi*, 363 Pa.Super, 584, 592, n. 2, 526 A.2d 1216, 1220 n. 2 (1987). The application of this rule would normally extinguish the agreement of sale. In the presence of fraud or mistake, however, a party may be entitled to rescission of the contract and cancellation of the deed. *Namy v. Black*, 367 Pa. 523, 80 A.2d 744 (1951); *Butler v. Stillwater Lake Civic Ass'n*, 45 Pa. D & C 3d 66 (Monroe 1986).

■ In the case before us, the plaintiffs have alleged fraud by defendants. A mistake also may have occurred because the plaintiffs may not have free and clear title to their condominiums. Plaintiffs' Brf. in Opposition To Defendants' Motion to Dismiss p. 10. Since fraud and/or mistake may be present, the purchase and sales agreement cannot be extinguished. Therefore, the plaintiffs can bring an action based on an alleged breach.

■ The question remains: Can plaintiffs assert a breach of contract against the defendants who were not parties to the contract? Defendants assert that dismissal is in order with regard to all the defendants except Resort because they were not parties to the agreement. For the reasons set forth below, we agree. Count III will be dismissed as to all defendants except Resort.

In *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185 (1977), a non-party to a contract was sued. The Pennsylvania Supreme Court held that "there can be no recovery on a contract from one who was not a party thereto ..." and refused to impose liability upon that entity. *Id.* at 46, 369 A.2d at 1187, *quoting Geyer v. Huntingdon County Agricultural Assn*, 362 Pa. 74, 77, 66 A.2d 249, 250 (1949). *See also Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 n. 4 (3rd Cir.1976).

In one reported decision, this general rule of contract law has had an exception

read into it. *Allen Organ Co. v. North American Corp,* 363 F.Supp. 1117 (E.D.Pa. 1973) (citing *Sciccitano v. Brown,* 43 Wash.Co. 69 (1962). This exception exists "where a person, not a party to the contract, is charged with fraud in *bringing about a default* under the contract." *Id.* at 1130 (emphasis added). This so called exception, however, was essentially a trial court's recognition of a trespass action for fraud which was brought in assumpsit. *Sciccitano,* 43 Wash.Co. 69 (1962). We do not find the exception applicable to this case. The alleged fraud in this case pertains to the *formation* of the underlying contract, not the plaintiffs' default. Moreover, application of the exception would only circumvent the statute of limitations which already bars the plaintiffs' fraud claim.

Our decision to grant the Motion to Dismiss Count III as to all the defendants except Resort requires that we address Resort's contention that the plaintiffs have failed to state a claim upon which relief can be granted. Dismissal cannot be granted unless it appears beyond doubt that a plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Consequently, the complaint is construed in the light most favorable to plaintiffs and its allegations are taken as true. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (1969).

▮▮▮ Plaintiffs' allegations fall short of asserting a short, plain statement of the grounds upon which plaintiffs are entitled to relief. Fed.R.Civ.P. 8(a). Nevertheless, it appears plaintiffs may be able to prove a set of facts which would entitle them to recover from Resort. The purchase and sales contracts state:

> Seller shall deliver to purchaser at closing fee simple title by General Warranty Deed, free and clear of all liens (except liens securing purchase money financing and interim loan warehousing). It is understood and agreed that the Apartment to be conveyed will be subject to the Declaration of Condominium Horizontal Property Regime and purchaser agrees to upon closing, be bound by the terms and conditions thereto ...

Appendix to Defendants' Motions to Dismiss the Plaintiffs' Second Amended Complaint, Exhibit 3. Plaintiffs assert that "[t]here is a dispute as to whether purchasers of units in Phase I of BKS & CC have legal right of access to their property ..." and whether "the title was defective due to a lack of assured access." Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, p. 10, n. 6. Inasmuch as a warranty deed covenants that the grantor warrants the deed against the lawful claims of all persons whatsoever, Black's Law Dictionary 1759 (4th ed.1968), plaintiffs may be able to prove a right to recover for breach of contract. Therefore, Resort's Motion to Dismiss will be denied.

## IV. RESCISSION

Plaintiffs' fourth and final claim against defendants prays for rescission of the purchase and sales agreements. Defendants contend that rescission is inappropriate because the plaintiffs failed to act promptly when they discovered the facts warranting rescission. Plaintiffs disagree and argue that their claim for rescission is unaffected by the fact that the instant action was not filed until December 1986.

Plaintiffs settled on their condominiums from November 25, 1982, to February 13, 1983. 2d Am.Co. ¶ 61. Then, in the spring of 1983 plaintiffs learned that inferior and lower priced ski-chalets were to be substituted for Phase II of their condominiums. *Id.,* ¶ 64(h)(5)(i). Plaintiffs assert this conduct was fraudulent since they had previously been informed that Phase II would have only condominiums of a value greater than their own. Hence, plaintiffs assert that their sales agreements are void and that rescission should be granted.

Rescission is an appropriate remedy to seek when a contract may be void due to fraud. "The purpose of equitable rescission is to return the parties as nearly as possible to their original positions...." *Gilmore v. Northeast Dodge Co., Inc.,* 278 Pa.Super. 209, 213, 420 A.2d 504, 507 (1980). Rescission must be sought, how-

ever, within a reasonable time after the facts demonstrate that the remedy is warranted. *Fichera v. Gording*, 424 Pa. 404, 227 A.2d 642 (1967); *Galati v. Potamkin Chevrolet Co.*, 198 Pa.Super. 533, 181 A.2d 900 (1962); *Cavanaugh v. Trued*, 28 D & C 3d 681 (Monroe 1984).

The plaintiffs' suit seeking rescission in *Galati v. Potamkin Chevrolet Co.*, 198 Pa.Super. at 533, 181 A.2d at 900, failed to meet the law's requirement that this remedy be sought within a reasonable time. Galati, the plaintiff, had purchased a car and obtained a loan from the bank. Galati discovered approximately two weeks after his purchase that the price of the loan exceeded the amount agreed to by the parties. Galati notified the defendant of the difference and attempted to resolve the issue for approximately ten months. Then when the defendant made it clear that it did not intend to resolve the dispute, Galati notified defendant of his intent to proceed legally. He then continued to make payments on the loan for another 15 months before instituting an action to rescind. The court held that Galati failed to bring suit for rescission within a reasonable time from that point when he learned his suit could not be amicably resolved. Therefore, a rescission claim was barred and Galati was limited to a contract claim for the difference.

We find the reasoning of the *Galati* decision persuasive. Plaintiffs in the instant matter became aware of the facts warranting rescission for fraud in the spring of 1983. Accordingly, they had a duty to notify defendant Resort [16] of their intent to seek rescission. Whether they, in fact, did notify defendant Resort is unknown. But in 1984 plaintiffs filed a lawsuit against defendants Resort, U.S. Capital Corporation and Billy J. Bobo seeking to compel the merger of the lower priced condominium with their own. This suit notified the defendants that plaintiffs did not believe they were getting the benefit of the contracts into which plaintiffs had entered. Defendants' Appendix, Exhibit 4. This suit

was abandoned by plaintiffs after preliminary injunctive relief was denied. U.S. Capital defendants' Brief in Support of Motion to Dismiss, p. 1. Despite the fact that Resort, U.S. Capital and Bobo made it clear they did not intend to resolve the disputed issue, plaintiffs waited to file the instant action until December 5, 1986. Plaintiffs failed to act within a reasonable time after they learned the dispute could not be resolved. Therefore, plaintiffs' rescission claim is barred. *Galati*, 198 Pa.Super. at 533, 181 A.2d at 900.

An appropriate order will be entered.

## ORDER

AND NOW, this 3rd day of August, 1989, upon consideration of the Motion to Dismiss Plaintiffs' Second Amended Complaint, it is

ORDERED that:

1. Summary judgment is granted in favor of the U.S. Capital Defendants with regard to the plaintiffs' RICO action based on 18 U.S.C. § 1962(a).

2. Summary judgment is denied with regard to the plaintiffs' RICO action based on 18 U.S.C. § 1962(c) against the U.S. Capital defendants.

3. Summary judgment is denied with regard to the plaintiffs' RICO action based on 18 U.S.C. § 1962(d) against the U.S. Capital defendants.

4. The Motion to Dismiss is granted in favor of the Mellon defendants as to plaintiffs' RICO actions based on 18 U.S.C. § 1962(a), (c) and (d). Leave to amend is denied.

5. Summary judgment is granted in favor of all defendants with regard to plaintiffs' common law action for fraud.

6. Summary judgment is granted with regard to plaintiffs' Breach of Contract action in favor of all defendants, except for defendant, Resort Investment Corporation.

7. Summary judgment is granted in favor of all defendants with regard to plaintiffs' Rescission action.

---

**16.** Because of our disposition of plaintiffs' breach of contract claim, plaintiffs' rescission claim can be asserted against only defendant Resort.

8. U.S. Capital defendants are directed to answer the Second Amended Complaint on or before August 14, 1989. To the extent allegations in the Second Amended Complaint pertain solely to plaintiffs' claims asserting causes of action based on 18 U.S.C. § 1962(a), common law fraud or rescission, U.S. Capital defendants need not answer said allegations.

9. Mellon defendants' Motion for a Protective Order is denied as moot.

10. Plaintiffs shall comply with the attached RICO Order as it pertains to their viable RICO actions under § 1962(c) and (d) against the U.S. Capital defendants. Failure to comply with the Order will result in the dismissal of plaintiffs' RICO claims.

11. The U.S. Capital defendants and plaintiffs shall attend a status conference on Thursday, August 17, 1989, at 4:30 P.M., in Courtroom No. 10 of the U.S. Courthouse, Pittsburgh, PA.